United States Court of Appeals,

Fifth Circuit.

No. 92-9010.

Merlyn J. POLLOCK, Plaintiff-Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, As Receiver for First City
Texas Dallas, Defendant-Appellee.

April 4, 1994.

Appeal from the United States District Court for the Northern
District of Texas.

Before GOLDBERG, JOLLY, and BARKSDALE, Circuit Judges.

GOLDBERG, Circuit Judge:

The parties in this case have separately orchestrated a series
of mortgage transactions and have fashioned clashing
interpretations of a common work. Both Merlyn Pollock ("Pollock")
and the Federal Deposit Insurance Corporation ("FDIC") have
attempted to present a melodious symphony to the court. Despite
utilizing the same notation, the same sheet music, the same
instruments documenting their transaction, the parties produce
contrapuntal arrangements whose dominant tones fail to generate
harmonious melodies. Although successful in individually creating
euphonious arrangements, sung together, their mellifluous tunes
degenerate into more cacophony than symphony.

Because both sides to this dispute harmonize the instruments
of the agreement in a reasonable fashion, we find that the relevant
documents are essentially ambiguous. We therefore reverse and
remand the case to allow the district court to determine the most

1

melodic interpretation of the parties' intentions.

## I. Background

We sound the opening notes of our composition by laying out the facts which form the background rhythms over which we can then lay out the conflicting melodies. Merlyn Pollock entered into an agreement in August of 1986 to purchase from First City Bank—Valley View ("First City") the Kreck Foods meat processing plant and property ("meat plant"). Pollock executed a promissory note ("Original Pollock Note") in favor of First City to finance the acquisition of the meat plant. The note, in the principal amount of $1,879,242, was secured by a deed of trust ("Original Deed of Trust").

The Original Deed of Trust pledged the meat plant as collateral for First City under the Original Pollock Note. Importantly, the Original Note was a non-recourse loan. Thus, upon default by Pollock, the meat plant itself was the only asset available as security for First City. Pollock was to have no personal liability under the loan.

In September of 1986, two weeks after signing the original loan documents, Pollock executed a security agreement ("Security Agreement") in favor of First City, pledging a Certificate of Deposit in the principal amount of $89,179.71 to secure *all* existing and future indebtedness that Pollock had with First City. The Security Agreement provided that the Certificate of Deposit would remain as security on all Pollock's indebtedness until First City executed a written termination statement and returned the

2

collateral to Pollock.

In March of 1987, Pollock and First City entered into an agreement to restructure Pollock's meat plant debt pursuant to which Pollock executed a second promissory note ("Renewal Note") in the principal amount of $1,975,000 in favor of First City. As Pollock had made no payments under the Original Note, the entire amount of that debt was rolled into the Renewal Note. As part of the renewal and extension of the Original Note, Pollock executed a second deed of trust ("Renewal Deed of Trust") in favor of First City to secure his continuing indebtedness.

The Renewal Note contained, similar to the Original Note, a non-recourse provision that stated, "If this Note is not paid at maturity, ... Holder's sole remedy shall be to foreclose its security interest and lien upon the Property described in the Deed of Trust, and Maker shall have no personal liability to Holder for the Indebtedness herein described." The accompanying Renewal Deed of Trust then described "mortgaged property" to include "any and all security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Indebtedness or the performance and discharge of the Obligations."[1]

When Pollock failed to make the first payment under the Renewal Note, the Note was accelerated and the meat plant property was posted for foreclosure. After the property was sold and the proceeds applied to the indebtedness due under the Renewal Note,

---

[1]The construction of the phrase "now or hereafter given" in the Renewal Deed of Trust is the central dispute in this controversy.

First City applied Pollock's Certificate of Deposit against the remaining deficiency.

On January 25, 1991, Pollock filed a civil action in Texas state court, seeking recovery against First City, Texas—Dallas, successor in interest by merger with First City Bank, Valley View,[2] for the proceeds of the Certificate of Deposit. Cross motions for summary judgment were filed, arguing that the Certificate of Deposit either did or did not collateralize the Renewal Note and therefore could or could not be applied against the deficiency incurred under that note.

The state district court entered a judgment in favor of First City as a matter of law. The court held that the loan documents evinced the parties' intention to utilize the Certificate of Deposit as security on Pollock's meat plant loan. The Bank, according to the state court, had therefore acted properly in using the proceeds from the Certificate of Deposit as an offset against the deficiency on the loan.

Pollock perfected an appeal to the state appellate court on January 15, 1992. Oral argument was scheduled for November 4, 1992. On October 30, the Texas Banking Commission appointed the Federal Deposit Insurance Corporation as receiver for First City, and, on November 3, the FDIC intervened in this suit. That same day, the FDIC removed the action to the United States District Court pursuant to 12 U.S.C. § 1819(b)(2)(B). The federal district

---

[2]For the sake of clarity, we will also refer to the successor organization as "First City."

4

court adopted the judgment of the state court and transferred the case to our court for review.

## II. Analysis

For the central movement of this dispute, Pollock suggests two distinct thematics, one jurisdictional, the other substantive. His jurisdictional argument submits that the federal district court acted improperly in adopting and transferring the case to this court and that this case was improperly removed from the state court in the first place. On the substantive side, Pollock contends that the state court erred in granting summary judgment in favor of First City because the Renewal Note and Deed of Trust did not allow recourse to the Certificate of Deposit. In the alternative, Pollock asserts that the documents are ambiguous as to the collateralization of the Certificate of Deposit. We begin by addressing the procedural and jurisdictional issues and subsequently confront the substantive questions raised against the judgment.

## A. Federal Court Jurisdiction

Pollock complains that we cannot have jurisdiction over his case because the adoption and transfer order issued by the district court does not constitute a "final decision." As such there was no adjudication on the merits by the federal district court, and therefore, he claims there can be no order that could properly be appealed to this court. His arguments have no merit in light of our recent *en banc* decision in *In re Meyerland,* 960 F.2d 512 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 967, 122 L.Ed.2d

5

123 (1993).

The district court in the instant case precisely followed the instructions laid out in *Meyerland* and by subsequent rulings interpreting that decision. In *Meyerland,* we held that the district court should "take the state judgment as it finds it, prepare the record as required for appeal, and forward the case to a federal appellate court for review." 960 F.2d at 520. This is precisely the course of action taken by the district court here. *Meyerland* continues:

> A case removed from state court simply comes into the federal system in the same condition in which it left the state system. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Etc.,* 415 U.S. 423, 435-36, 94 S.Ct. 1113, 1122-23, 39 L.Ed.2d 435 (1974). For instance, if the notice of appeal was adequate in the state court system, it should be deemed adequate when it enters the federal courts, regardless of whether the state technical requirements for notice of appeal differ from the federal.

*Id.* *Meyerland* 's reasoning upholding the adoption and transfer procedure has been routinely reaffirmed since the announcement of that decision. *See In re 5300 Memorial Investors, Ltd.,* 973 F.2d 1160 (5th Cir.1992); *McMillan v. MBank Fort Worth, N.A,* 4 F.3d 362 (5th Cir.1993); *NCNB Texas National Bank v. Johnson,* 11 F.3d 1260, 1264 (5th Cir.1994). Under the scheme set out in these cases, the lower court in this case acted properly and Pollock's argument as to this point is simply without merit.

Pollock additionally challenges the removal to federal court by arguing that 12 U.S.C. § 1819(b)(2)(B) does not grant subject matter jurisdiction to the federal courts under the facts of this

case.[3]  That section makes clear that, except in very limited circumstances, all civil cases to which the FDIC is a party are deemed to arise under federal law.[4]  Pollock concedes the general rule of removal but asserts that this case falls within the exception expressed in 12 U.S.C. § 1819(b)(2)(D).  Under that provision, an action shall not be deemed to arise under the laws of the United States if it is an action:

> (i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;

> (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution;  and

> (iii) in which only the interpretation of the law of such State is necessary

12 U.S.C. § 1819(b)(2)(D).

The resolution of this issue is found through a simple and straightforward application of the last requirement—this is not a case in which only the interpretation of state law is necessary.

---

[3]12 U.S.C. § 1819(b)(2)(B) provides that "Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party."

[4]12 U.S.C. § 1819(b)(2)(A) provides that "Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States."

The FDIC has asserted the special defense of *D'Oench Duhme*[5] and the codification of that defense set forth at 12 U.S.C. § 1823(e). It is well settled that when such federal defenses are raised, the exception expressed in section 1819(b)(2)(D) is inapplicable. *Diaz v. McAllen State Bank,* 975 F.2d 1145, 1149 (5th Cir.1992). In determining whether a case involves only the interpretation of state law, courts are "to consider the case as a whole—complaint and likely defenses as well." *Capizzi v. Federal Deposit Ins. Corp.,* 937 F.2d 8, 10 (1st Cir.1991). Courts have abandoned the well-pleaded complaint rule under section 1819(b)(2)(D) in favor of a test which focuses on the question of whether the federal defenses are colorable. *Diaz,* 975 F.2d at 1149-50, *Capizzi,* 937 F.2d at 8.

In this case the FDIC has asserted colorable *D'Oench* and federal statutory defenses to Pollock's claim.[6] The district

---

[5]The doctrine of *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), as we have previously stated, "protects the FDIC, as receiver of a failed bank or as purchaser of its assets, from a borrower who has "lent himself to a scheme or arrangement' whereby banking authorities are likely to be misled." *Bowen v. Federal Deposit Ins. Corp.,* 915 F.2d 1013, 1015 (5th Cir.1990) (quoting *Beighley v. Federal Deposit Ins. Co.,* 868 F.2d 776, 784 (5th Cir.1989)).

[6]We do not feel it necessary to express an opinion as to the merits of the *D'Oench* defenses in the present appeal. *See Diaz,* 975 F.2d at 1150 (in determining whether a defense is colorable, the court "need not express an opinion on the merits of the case...."). These defenses will only become relevant upon remand when the lower court evaluates evidence extrinsic to the bank's records in determining the intent of the parties at the time of the formation of the loan agreements.

The district court on remand will be faced with the question of whether *D'Oench* can be raised by the FDIC to preclude the admission of extrinsic evidence of side

8

court, therefore, properly found that it had jurisdiction pursuant to 12 U.S.C. § 1819(b)(2)(A) and (B) and that the exception to removal in section 1819(b)(2)(D) does not apply in this case. Believing that we have solved the jurisdictional conundrums raised by Pollock, we proceed to a discussion of his substantive contentions.

## B. Non-Recourse Loan v. Dragnet Clause

The standard of review for summary judgments in cases that have been removed to federal court after final judgment by a state court was set forth in *Walker v. Federal Deposit Ins. Corp.,* 970 F.2d 114 (5th Cir.1992). In *Walker,* we held:

> The standard of review is the same as if the federal court itself had entered the order. In effect, we look through the federal district judge's eyes at the state court's justifications for these orders. Federal rather than state procedural law applies since federal law controls the course of proceedings from the point of removal. We review the summary judgment award de novo, independently of the state or federal district court, and resolving all reasonable doubts and drawing all reasonable inferences in favor of the party opposing summary judgment.

970 F.2d at 121 (citations removed). The grant of summary judgment must be affirmed when, in viewing the evidence in the light most favorable to the opposing party, there are no genuine issues of material fact to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). As a result, summary judgment is proper "unless there is sufficient evidence favoring the nonmoving party for a jury to return a

---

agreements in clarifying the ambiguous loan agreement. We leave this issue to the district court which should be allowed not only the first bite at this apple, but an opportunity to consume the entire core.

9

verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50, 106 S.Ct. at 2510-11 (citations omitted). Federal Rule of Civil Procedure 56(c) provides that a grant of summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court granted summary judgment in favor of First City finding that the terms of the several loan agreements allowed the bank to offset the Certificate of Deposit against a deficiency on the meat plant property. Pollock complains that this decision is in error because the documents in this transaction are ambiguous as to whether the Certificate of Deposit was properly subject to offset against the loan.[7] Because we find that the loan transaction documents allow of two reasonable interpretations, neither of which is obviously preferable, we reverse the grant of summary judgment and remand for further proceedings to resolve the ambiguity.

As common sense would have it, "[a] mortgage is governed by the same rules of interpretation which apply to contracts." *Sonny Arnold, Inc. v. Sentry Savings Ass'n,* 633 S.W.2d 811, 815 (Tex.1982). The initial determination of ambiguity is a question

---

[7]The FDIC argues that Pollock failed to raise the issue of ambiguity in the court below. However, it is implicit in the argument that a document which is unambiguous in one direction necessarily involves some element that the instrument is, at least, not unambiguous in the other direction.

10

of law subject to *de novo* review on appeal. *Guidry v. Halliburton Geophysical Servs., Inc.,* 976 F.2d 938, 940 (5th Cir.1992); *Childers v. Pumping Systems, Inc.,* 968 F.2d 565, 569 (5th Cir.1992). If the court can ascertain that the contract is "reasonably susceptible to more than one interpretation, it is ambiguous." *Childers,* 968 F.2d at 569; *Towers of Texas, Inc. v. J & J Systems, Inc.,* 834 S.W.2d 1, 2 (Tex.1992) ("A written instrument is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning, taking into consideration the circumstances present when the instrument was executed"). Additionally, we note that "[a] contract is not ambiguous merely because the parties disagree upon the correct interpretation." *D.E.W., Inc. v. Local 93, Laborers' International Union,* 957 F.2d 196, 199 (5th Cir.1992).

We also recognize that "mortgages to secure other indebtedness will be effective to secure only items of indebtedness that were within the reasonable contemplation of the parties at the time the mortgage was executed." *Bank of Woodson v. Hibbitts,* 626 S.W.2d 133, 134 (Tex.App.—Eastland 1981, writ ref'd n.r.e.). The court in *Bank of Woodson* noted that where a deed of trust is unambiguous, an objective reading of the language of the instrument determines what the parties reasonably contemplated would be secured. *Id.* at 134-35 (citing *Kimbell Foods, Inc. v. Republic National Bank of Dallas,* 557 F.2d 491 (5th Cir.1977), *aff'd,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979)).

With these principles in mind, we turn to the language of the

11

documents that make up the meat plant transaction to determine whether the parties unambiguously intended the Certificate of Deposit to secure the meat plant loan. A revisitation of the loan documents demonstrates that they are susceptible to two reasonable interpretations.

Pollock refers us to the Renewal Note and Deed of Trust which specifically provide that the loan will be non-recourse with the bank's sole remedy upon default being foreclosure upon the real estate described in the Deed of Trust. Pollock was to have "no personal liability" under the arrangements.

The FDIC notes, however, that two weeks after signing the Original loan documents, Pollock executed the Security Agreement covering the Certificate of Deposit. That agreement contained a dragnet clause stating that the collateral specified therein (the Certificate of Deposit) secured all present and future loans and obligations maintained by Pollock. Under the original arrangements, a non-recourse loan and a dragnet clause, we find a prelude to the disharmony in the documentation of the Pollock-First City Renewal documents.

The Renewal Deed of Trust increased the dissonance by securing First City under the Renewal Note with "any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Indebtedness or the performance and discharge of the Obligations." We are forced into contractual confusion by the phrase "now given". We have searched for some language in the contract which establishes the connection or lack thereof, between

12

the Certificate of Deposit and the Renewal loan transaction. Unfortunately, we have not found the interpretation of the "now given" phrasing that can bring us out of this choral dissonance.

Pollock urges that "now given" was intended to mean concurrently given with the Renewal Deed of Trust. That is, Pollock claims that only if the Certificate of Deposit was given over to First City simultaneously with the execution of the Renewal Deed of Trust, would it secure the non-recourse loan. However, since the Certificate of Deposit was given to First City *prior* to the execution of the Renewal Deed of Trust, Pollock contends that it was not intended to collateralize the meat plant property transaction.

If First City had intended to specifically include the Certificate of Deposit as collateral under the Renewal Deed of Trust, Pollock suggests that the Renewal Deed of Trust would have to refer to all security and collateral "now, heretofore, and hereafter given". Since the actual Renewal Deed only states "now or hereafter given" it does not indicate an intention to include collateral given prior to the Renewal Deed of Trust. Because there was no explicit reference to the Security Agreement in any of the Renewal documents, Pollock argues the Security Agreement, which was "given" six months earlier, cannot be "now given".

Sounding an entirely different tune, the FDIC alleges that the term "now given" should not be given such a narrow construction. Instead, it claims that "now given" refers to all collateral given by Pollock up to and including the time of the execution of the

13

Renewal transaction. The reference of "now given" should be given a more expansive interpretation which, it urges, is the more natural reading of the contract.

The FDIC additionally argues that it can offer an interpretation of the instruments which brings all the documents into accord. Texas law requires that courts construe a contract so as to bring its various provisions into harmony. *Chapman v. Orange Rice Milling Co.,* 747 F.2d 981 (5th Cir.1984). The FDIC points out that the Security Agreement provided that the Agreement would continue in full force and effect until First City executed a written termination statement and reassigned to Pollock the Certificate of Deposit. The Security Agreement had a definite date of inception and a ritual for termination. Because the evidence establishes that there has been no such termination, the FDIC concludes that the Security Agreement was in continuing effect at the execution of the Renewal Deed of Trust and should therefore be considered "now given".

As a postlude, the FDIC argues that even under the interpretation of "now given" suggested by Pollock, the Renewal Deed of Trust would include the Certificate of Deposit as security on the meat plant loan as long as there was language in the Renewal Deed of Trust specifically referring to the Security Agreement in such a way that it could be considered given simultaneously. The FDIC notices that Section 11.1 of the Renewal Deed of Trust expressly provides for the survival of all security previously given for the debt. Section 11.1 of the Renewal Deed of Trust

14

states: "Each and all of the Obligations shall survive the execution and delivery of the Security Documents, and the consummation of the loan called for therein, and shall continue in full force and effect, until the Indebtedness shall have been paid in full." In its definition of the Security Documents, the Renewal Deed includes "any and all other documents now or hereafter executed by [Pollock] or any other person or party to evidence or secure the payment of the Indebtedness...."

The thrust of these provisions, according to the FDIC, is that the Security Agreement was referenced in the renewal of obligations. The Security Agreement, given six months previous, must be considered "now executed" under the terms of this renewal section in order for this provision to make sense. That is, it would not be necessary to provide for the survival of documents executed at the time of renewal since a document created simultaneously with the renewal would not require renewal. Thus, the FDIC argues that this section implicitly includes the Security Agreement in the survival provision of the Renewal Deed of Trust. In other words, the FDIC claims that section 11.1 renews the giving of the Certificate of Deposit in such a way as to make it simultaneously given with the Renewal Deed of Trust and thus within the mortgaged property available to secure the meat plant loan.

Our own reading of the documents shows that the loan contracts and security agreements allow for the interpretations advanced by both parties. We have a genuine ambiguity, and the case will have to be returned to the lower court for consideration of extrinsic

evidence in order to discover which interpretation most closely follows the intent of the parties.[8] *See Childers,* 968 F.2d at 574.

Obviously the documents in the present context were not paradigms of clarity. The lower court will have to bring some pellucidity to their words. This can be done by reference to the environment at the time of the formation of the agreement as well as to the discussions which surrounded the execution of the loan documents.

It is impossible to determine based on the loan documents alone, without reference to extrinsic evidence, whether the certificate of deposit was intended to secure the Renewal Note. We have a non-recourse loan conflicting with a security agreement containing a dragnet clause purporting to secure Pollock's entire indebtedness. Furthermore, the Renewal Deed of Trust includes language which suggests the Certificate of Deposit was intended to come within the ambit of secured property under the meat plant loan while concurrently stating that Pollock will bear no personal liability under that loan.

In sum, we find that the loan documents dispute, which is properly before this court, can only be resolved by evaluating the circumstances of the formation of the contract. The dissonance can be harmonized by looking to extrinsic evidence in order to determine the parties' intentions as to whether the Certificate of Deposit was intended to secure the meat plant property loan. The

---

[8]As noted above, the court on remand will have to consider the merits of the *D'Oench* defenses in this regard. *See supra* note 6.

case is remanded for additional proceedings to make the required findings of fact.[9]  For the preceding reasons, we remand this case for further action.

III. Conclusion

The judgment of the lower court is REVERSED, and we REMAND this case for further proceedings in accordance with this opinion.

---

[9]*See supra* note 6.