**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Nicholas STERNER, Defendant–Appellant.**

No. 91–50745.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1994.

Decided May 2, 1994.

David A. Katz, Katz & Associates, Los Angeles, CA, for defendant-appellant.

Patricia Donahue, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: SNEED, THOMPSON, and RYMER, Circuit Judges.

Opinion by Judge SNEED; Dissent by Judge RYMER

SNEED, Circuit Judge:

Nicholas Sterner appeals his conviction and sentence for conspiracy to sell and for delivery of stolen treasury checks in violation of 18 U.S.C. §§ 371 and 510. Because the entrapment instructions given to the jury misstated the law as set forth in *Jacobson v. United States,* —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), we reverse Sterner's conviction and remand for a new trial.

## I.

### *FACTS AND PRIOR PROCEEDINGS*

On March 25, 1991, government informant Wayne Pedersen notified the Orange County District Attorney's Office that Nicholas Sterner had solicited him to purchase stolen income tax refund checks.[1] Pedersen knew Sterner from prison, where both served time for fraud.

Shortly after their initial conversation, Sterner and Pedersen began negotiating the sale of approximately $100,000 in stolen treasury checks.[2] Meanwhile, Sterner was also negotiating with Amelia Venida to supply the stolen checks to be sold to Pedersen. On April 2, Sterner gave Pedersen a sample check procured from Venida, telling him that the suppliers had 100,000 checks worth up to $13,000 each. Sterner and Pedersen finalized the details of the sale by phone the next day.

On April 4, Sterner, Venida, and Genovevo Quiocho met Pedersen and an undercover agent in a hotel parking lot. Quiocho delivered the stolen checks while Jose Lengson, as the lookout, drove around the parking lot. Police soon arrested all four—Sterner, Venida, Quiocho, and Lengson.

After his arrest, Sterner waived his rights and gave a statement in which he explained his participation in the stolen treasury check scheme. According to Sterner, Larry "Angel" Elegino contacted Sterner and told him he had access to some checks through his check-cashing business. Sterner said he was not interested. Later, however, when Sterner and Pedersen discussed the establishment of a mortgage business, Pedersen mentioned he knew someone with a check-cashing business. Sterner then told him of Elegino's proposition. Pedersen got excited and insisted on seeing a sample check. Because Elegino was out of town, Sterner procured the sample from Elegino's girlfriend, Amelia Venida. The attempted sale to Pedersen took place shortly thereafter.

At trial, Sterner claimed that: (1) Pedersen introduced him to Elegino; (2) Pedersen promised to set him up in the mortgage business if he would show his loyalty by procuring the stolen checks from Elegino; and (3) Elegino was a Secret Service informant. Sterner thus alleged that the government was on the supplying side as well as the buying side of the treasury check transaction.

The jury rejected Sterner's entrapment defense and convicted him of conspiring to sell and of delivering 39 stolen treasury checks worth $116,137.89. The district court sentenced Sterner to 21 months' imprisonment and three years of supervised release. Sterner timely appeals.

## II.

### *JURISDICTION AND STANDARD OF REVIEW*

██ This court has appellate jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C.

---

1. At the time, Pedersen was acting as a confidential informant to the U.S. Attorney's Office and to several other agencies in Southern California in an attempt to reduce a potential 20-year sentence for mail fraud. Pedersen is currently a fugitive, having disappeared with at least $10,000 obtained from unwitting "investors."

2. At the behest of the district attorney's office, Pedersen recorded most of these extensive negotiations.

§ 1291. "Whether a jury instruction properly states the law of entrapment is a pure question of law subject to *de novo* review." *United States v. Lessard,* 17 F.3d 303, 304 (9th Cir.1994). When an issue is raised for the first time on direct appeal, we will exercise our discretion to correct plain error only in those cases " 'in which a miscarriage of justice would otherwise result.' " *United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)).

## III.

### DISCUSSION

■ On appeal, we must first decide whether the entrapment instructions in this case misstated the government's burden of proving a defendant's predisposition to commit illegal acts. If so, the issue becomes whether the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations omitted).[3]

■ A proper entrapment instruction informs the jury that the government has to prove beyond a reasonable doubt the defendant's predisposition "to violate the law *before* the [g]overnment intervened." *Jacobson,* —— U.S. at ——–—— & n. 2, 112 S.Ct. at 1540–41 & n. 2; *United States v. Mkhsian,* 5 F.3d 1306, 1311 (9th Cir.1993).[4] In the case before us, the trial court instructed the jury that:

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and as a matter of policy, the law forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that government agents provide what appears to be a favorable opportunity is not entrapment. (Appellee's Supplemental Excerpts of Record, vol. I, at 51). We held in *Mkhsian* that the trial court committed plain error in giving entrapment instructions *identical* to those set out above. *Mkhsian,* 5 F.3d at 1310–11; *see also Lessard,* 17 F.3d at 305–06 (holding that virtually identical entrapment instructions were plainly erroneous). Such instructions do not conform to *Jacobson's* requirements because the term "already" in the second paragraph is ambiguous and could mislead the jury to believe that "even 'if [the defendant] was not initially disposed to [commit the crime], he could ... develop such a disposition during the later course' of interacting with [the government informant]." *Mkhsian,* 5 F.3d at 1311; *Lessard,* 17 F.3d at 305.

■ We therefore must follow *Mkhsian* and *Lessard* and hold that the entrapment instructions given here were plainly erroneous. Because the instructions failed to inform the jury that the government had to prove Sterner's predisposition prior to his initial contact with the informant, they violated Sterner's right to have the jury instructed that the government must prove each substantive element of its case beyond a reasonable doubt. *See Lessard,* 17 F.3d at 306.

■ Nor can we say that this error was harmless. Indeed, the essence of Sterner's defense was that he had been lured into criminal activity by two government informants. A properly instructed jury might have found that Sterner was not predisposed to break the law prior to encountering Pedersen. Because the jury instructions here "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings,"

---

**3.** Sterner raised this issue for the first time in a letter of supplemental authorities filed pursuant to Federal Rule of Appellate Procedure 28(j). Although we will not ordinarily consider an issue raised for the first time in a 28(j) letter, we do so here to prevent "substantial inequity." *Martin v. Ylst,* 951 F.2d 1153, 1157 (9th Cir.1991).

The Supreme Court's recent *Jacobson* decision changed the law in this circuit. We announced

*United States v. Mkhsian,* 5 F.3d 1306 (9th Cir. 1993), and *United States v. Lessard,* 17 F.3d 303, while this appeal was pending. Both dealt with the precise issue before us here.

**4.** New rules apply retroactively to criminal cases on direct review. *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987).

*Olano,* —— U.S. at ——, 113 S.Ct. at 1779, we reverse Sterner's conviction and remand for a new trial.

In light of the foregoing, we need not address Sterner's remaining arguments on appeal.

REVERSED and REMANDED for a new trial.

RYMER, Circuit Judge, dissenting:

Accepting, as I am bound to by *United States v. Lessard,* 17 F.3d 303, 306 (9th Cir. 1994), that an instruction deficient under *United States v. Mkhsian,* 5 F.3d 1306, 1311 (9th Cir.1993), amounts to plain error, I nevertheless respectfully dissent because I believe the district court's instruction in this case satisfies *Mkhsian.*

The two paragraphs of the district court's instruction quoted by the majority, maj. op. at 252, appear at first blush to run afoul of *Mkhsian* 's holding that " '[a]lready' does not necessarily mean 'before the [g]overnment intervened[.]' " 5 F.3d at 1311 (second alteration in original) (quoting *Jacobson v. United States,* —— U.S. ——, ——, n. 2, 112 S.Ct. 1535, 1541 n. 2, 118 L.Ed.2d 174 (1992)). But that is not all that the district court stated in its entrapment instruction, and I am convinced that the extra language the district court included satisfies *Mkhsian.*

As I read *Mkhsian,* and in particular its reference to other cases where the district courts' instructions provided correct statements of the law, *see id.,* a proper entrapment instruction must direct the jury's attention to the defendant's criminal disposition *before* government officers intervened. The same instruction that contains the language quoted by the majority also includes the following language:

If then, the jury should find beyond a reasonable doubt from the evidence in the case that, *before anything at all occurred respecting the alleged offense involved in this case,* the defendant was ready and willing to commit crimes such as are charged in the indictment, whenever opportunity was afforded, and that government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

On the other hand, *if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit an offense of the character charged, apart from the inducement or persuasion of some officer or agent of the government,* then it is your duty to find him not guilty. The burden is on the government to prove beyond a reasonable doubt that the defendant was not entrapped.

(Emphasis added.) Although the question is close, I believe these instructions satisfy *Mkhsian.* The instruction did not state "before the government informant intervened," as *Mkhsian* appears to favor, but instead referred to "before anything at all occurred respecting the alleged offense involved in this case." There is no evidence, however, that there was any government intervention apart from the offense in this case.[1] Accordingly, I believe the instruction passes muster under *Mkhsian.*

---

1. This is in contrast to *United States v. North,* 746 F.2d 627 (9th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 832 (1985), which *Mkhsian* overruled, where the defendant and the undercover agent engaged in five separate drug transactions: the government didn't charge on the first, the jury acquitted on the second, and the defendant was found guilty for the latter three.