**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronald LORENZO, Defendant–Appellant.**

**No. 93–50821.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1994.

Decided Jan. 3, 1995.

**1304**

Gerald V. Scotti, Beverly Hills, CA, for defendant-appellant.

Brad M. Sonnenberg, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WIGGINS, KOZINSKI and DAVID R. THOMPSON, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Ronald Lorenzo was indicted on six criminal counts in connection with selling cocaine. He was convicted on count 1, conspiracy to distribute cocaine, on October 15, 1992. After a separate trial, at which he did not testify, he was found guilty on counts 2–6, consisting of conspiracy to possess cocaine with intent to distribute; possession of cocaine with intent to distribute; and distribution of cocaine. He appeals those convictions. This court has jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS

Robert Franchi moved to California to avoid further involvement with loan sharks and an organized crime figure (Dennis Lepore) in Boston. When Lepore came to California to reestablish ties, Franchi turned to the FBI for protection. He became a cooperating witness, was paid a salary, and cooperated on six major investigations. Often he wore a concealed recording device.

Franchi was introduced to Lorenzo by a friend of Lepore's in late 1987 or early 1988. He befriended Lorenzo and frequented his restaurant in Malibu. In September, 1989, Lorenzo participated in the sale of one kilogram of cocaine to Franchi. In July, 1990, he arranged for a two kilogram delivery. In September, 1990, he arranged a three kilogram delivery. These three transactions provided the basis for Lorenzo's convictions.

In this appeal Lorenzo argues that the trial court erred in not finding entrapment as a matter of law. He relies mainly on the fact that Franchi befriended him for two years, and did various minor favors for him, before Lorenzo engaged in any drug transactions with him. He also argues that the jury instructions were inadequate to inform the jury that, in determining whether he was

predisposed to commit these crimes, they were to focus on his predisposition before encountering any law enforcement officials. Third, he argues that the district court erred in giving an "*Allen* charge" to the jury after the judge had been informed that the jury was split 11–1. Lastly, he argues that he should have been allowed to impeach Franchi by bringing up his 1981 felony conviction. The trial court ruled that this conviction was inadmissible under Fed.R.Evid. 609(b), as it was more than ten years old at the time of the trial. Lorenzo argues that it was less than ten years old when the government's investigation into him was completed, and that the time period between that point and the filing of the indictment should have been tolled.

## DISCUSSION

### I. *Entrapment*

■ Lorenzo argues that the district court erred in not holding that he was entrapped as a matter of law. We review the district court's ruling on this question *de novo*. *United States v. Davis,* 36 F.3d 1424, 1430 (9th Cir.1994). Ordinarily, the question of entrapment is for the jury to resolve. *United States v. Mkhsian,* 5 F.3d 1306, 1309 (9th Cir.1993). To find entrapment as a matter of law, there must be undisputed evidence establishing both that defendant was induced to commit the crime and that he lacked the predisposition to do so. *Davis,* 36 F.3d at 1430–31. Lorenzo's claim fails on both counts.

### A. *Inducement*

■ Lorenzo has not presented " '*undisputed evidence* making it patently clear that an otherwise innocent person was induced to commit the illegal act.' " *Mkhsian,* 5 F.3d at 1309 (emphasis supplied in *Mkhsian*) (quoting *United States v. Skarie,* 971 F.2d 317, 320 (9th Cir.1992)). He argues that five undisputed facts show that Franchi induced him to commit these crimes: 1) Franchi frequented his bar; 2) Franchi brought customers with him; 3) Franchi loaned him money; 4) Franchi bought him airline tickets when

his father was ill; and 5) Franchi sold him discounted liquor. There is no evidence, however, that these things were offered in exchange for Lorenzo's participation in the drug scheme, or that the proposed drug deal was presented as a means of repaying the favors. The favors were simply done by the informant in order to befriend Lorenzo, the target of the investigation. We do not believe that Franchi's conduct "constitute[s] the sort of inducement that satisfies this element of the entrapment defense." *United States v. Garza–Juarez,* 992 F.2d 896, 909 (9th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 724, 126 L.Ed.2d 688 (1994); *see, e.g., United States v. Citro,* 842 F.2d 1149 (9th Cir.1988), *cert. denied,* 488 U.S. 866, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988) (finding insufficient evidence of inducement where the defendant only engaged in credit card fraud after an agent took him and his wife out for two expensive dinners (showing off that he was paying with a fraudulent credit card), and offered the defendant money).

■ Moreover, in a similar case, this circuit labelled "implausible" the argument that favors done by an agent left the defendant with a "sense of obligation." *Davis,* 36 F.3d at 1432. In *Davis,* the court found that the question of entrapment was for the jury, despite the fact that the informant in that case had treated the defendant and his wife to shows, hotels and restaurants, and had bought clothing and athletic goods for the defendant. *See id.* at 1429. In the present case, where Lorenzo admitted that Franchi actually ran up a debt at his restaurant, and had thereby become a "drain," the argument that Lorenzo felt a sense of obligation is even less plausible.

### B. *Predisposition*

■ Lorenzo's lack-of-predisposition argument is also unconvincing, especially when only *undisputed* exculpatory evidence is considered. *See Davis,* 36 F.3d at 1430–31. Of the following five factors used in this circuit for determining predisposition,[1] four weigh against Lorenzo, and the fifth is inconclusive: *Character:* Lorenzo threatened to hospitalize

---

1. *See Davis,* 36 F.3d at 1430 (citing *United States v. Becerra,* 992 F.2d 960, 963 (9th Cir.1993).

a suspected informant, and characterized himself as a "thief." The only witness who Lorenzo cites as having attested to his character was James Caan. But at trial, Lorenzo successfully argued that Mr. Caan was *not* a character witness. *Profit:* It is undisputed that Lorenzo engaged in the drug scheme for money. *Reluctance:* Franchi testified that Lorenzo did not reject doing a drug deal with him, and tapes showed defendant to be an eager participant. Lorenzo did turn down a drug deal proposed by two other government agents (whom he had never met), but the jury could have found this simply to be cautiousness, not reluctance. *Inducement:* As explained above, there is little, if any, undisputed evidence of inducement. *Initial Suggestion:* Lorenzo claims Franchi first suggested a drug deal. Franchi testified he cannot remember. This factor may, then, weigh in Lorenzo's favor. As a whole, however, the five factor test used to determine predisposition in this circuit clearly weighs against Lorenzo.

■ Evidence of how Lorenzo conducted himself once the criminal transactions were underway [2] also undercuts his lack-of-predisposition argument. Looking at the evidence in the light most favorable to the government, much of Lorenzo's conduct in performing these drug transactions indicates that he was well versed in the world of drug transactions: He advised Franchi and another person about how to avoid and detect surveillance officers. He stated that his supplier had been with him for fifteen years. He knew several cocaine suppliers. He stated he could get a better price for Franchi than another dealer. He offered to sell marijuana as well as cocaine. Lastly, he had an alternate buyer for the marijuana.

In sum, Lorenzo has failed to produce undisputed evidence demonstrating either that he was induced to commit these crimes or that he was not predisposed to commit them. In order to prove entrapment as a matter of law, he would have had to show both. Accordingly, the district court did not

err in rejecting his request for a finding of entrapment as a matter of law.

## II. *Jury Instructions*

■ Lorenzo argues that the district court erred in refusing to give his proposed entrapment instruction. He argues that the jury instructions given failed to satisfy the Supreme Court's requirement that to find no entrapment, the jury must find that the defendant was predisposed to commit the crime prior to the initial contact by the authorities. *Jacobson v. United States,* 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). This court reviews whether the jury instructions properly stated the law of entrapment *de novo.* *United States v. Sterner,* 23 F.3d 250, 252 (9th Cir.1994). We hold that the instructions given below do comply with *Jacobson.*

Four recent Ninth Circuit cases have disapproved of instructions similar to those given in this case. *Sterner,* 23 F.3d at 252; *United States v. Lessard,* 17 F.3d 303, 305–06 (9th Cir.1994); *Davis,* 36 F.3d at 1431–32; *Mkhsian,* 5 F.3d at 1310–11. The instructions in all four cases were almost identical to these from *Mkhsian:*

> Where a person has no previous intent ... but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment....
>
> On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that the government agent provides what appears to be a favorable opportunity is not entrapment.

5 F.3d at 1310. The problem with these instructions was that the term "already" in the second paragraph was ambiguous. It did not clearly tell the jurors that the defendant had to be predisposed to commit the crime *prior to any contact by government agents,* as required by *Jacobson.*

■ In the present case, the court substituted "has a previous intent or disposition or willingness" for "already has the readiness

---

**2.** This evidence is admissible for purposes of determining predisposition. *Davis,* 36 F.3d at 1432.

and willingness." Thus, the explanatory paragraph in this case stated:

> A person is not entrapped when that person has a previous intent or disposition or willingness to commit the crime charged and law enforcement officers or their agents merely provide what appears to be an opportunity to commit the offense.

"Has a previous intent or disposition" does more clearly indicate "prior to governmental contact" than did the term "already." We need not decide, however, whether this substitution, alone, is sufficient to cure the ambiguity complained of in the four prior Ninth Circuit cases. Another provision in the trial court's instructions dispelled any remaining ambiguity:

> In determining the question of entrapment, the jury should consider all of the evidence received in this case concerning the intentions and disposition of the Defendant *before encountering the law enforcement officers or their agents....*

(emphasis added). The four previous cases apparently did not include such a provision. This provision sufficiently describes the appropriate time frame for determining a defendant's predisposition. Indeed, it tracks the exact language that the *Mkhsian* court indicated was lacking in the instructions before it: "(proper instruction: defendant's disposition to be considered 'before encountering the law enforcement officers or their agents')." 5 F.3d at 1311 (citing *United States v. Hart,* 963 F.2d 1278, 1283 n. 1 (9th Cir.1992)). Accordingly, we find that the instructions as a whole comport with the Supreme Court's *Jacobson* decision.

### III.  *Allen Charge*

The district court's deliverance of an "*Allen* charge" must be upheld unless it is clear from the record that the charge had an impermissibly coercive effect on the jury. *United States v. Ajiboye,* 961 F.2d 892, 893 (9th Cir.1992). Lorenzo argues that the *Allen* charge in this case was coercive because

the court had been apprised of the jury's 11–1 split. We disagree.

The case upon which Lorenzo relies, *United States v. Sae–Chua,* 725 F.2d 530 (9th Cir.1984), did find that an *Allen* charge given to a jury locked at 11–1 was coercive and thus impermissible. However, the circumstances of that case were far different from the case at hand. The lynchpin of *Sae–Chua* was that the judge had polled the jury, and the dissenting juror therefore knew that the judge was aware of his identity. Knowing that the judge knew who he was, "the charge could only be read by the dissenting juror as being levelled at him." 725 F.2d at 532. In the instant case the judge did not ask what the division was. There is no evidence that he knew who the dissenting juror was. Further, the judge did not even know whether the majority position was to convict or acquit. The note he received from the jury foreman simply stated that the vote was 11–1, not which way it was leaning.

The present case much more closely resembles a subsequent Ninth Circuit case in which an *Allen* charge to a deadlocked jury was upheld. In *Ajiboye,* 961 F.2d at 894, the court found the anonymity of the dissenting jurors to be an important factor in concluding that an *Allen* charge was not impermissibly coercive. That court went on to cite several other factors that indicated that the charge was not coercive, all of which similarly suggest that the instant charge was permissible. *See id.* In both cases the judge gave the charge only once. Neither jury reached its verdict immediately after receiving the charge.[3] Both juries asked the court to replay some testimony from the trial, and both courts complied. And lastly, both judges emphasized that the jurors were not to surrender their honest convictions solely to reach a verdict.

In sum, there is nothing to indicate that the charge by the trial court was coercive. Instead, the indicia of noncoercion that were listed by the *Ajiboye* court all tend to show

---

3. The jury in this case deliberated for another five and a half hours. *Cf. United States v. Beattie,* 613 F.2d 762, 766 (9th Cir.1980), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838

(1980) (finding three and a half hours of additional deliberation to be a significant factor in finding no coercion).

that the charge in the instant case was permissible.

## IV. *Evidence of Franchi's Prior Conviction*

Lorenzo argues that he should have been allowed to use Franchi's 1981 felony conviction for impeachment purposes. The district court found the conviction time-barred pursuant to Fed.R.Evid. 609(b). The resolution of this question calls for construction of the Federal Rules of Evidence and is therefore subject to *de novo* review. *United States v. Cuozzo,* 962 F.2d 945, 947 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992).

■■■ Franchi was convicted of a felony in December of 1981 and sentenced to probation. The indictment against Lorenzo was returned in May, 1992, ten years and five months after Franchi's conviction. Lorenzo argues that the government's investigation of him was complete in September, 1990, however, and that the period from then until the date of indictment should have been tolled. If that period had been tolled, Franchi's prior conviction would have been admissible under Rule 609(b).

Lorenzo relies upon *United States v. Mullins,* 562 F.2d 999 (5th Cir.1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1452, 55 L.Ed.2d 496 (1978), to support his argument. This reliance is misplaced. In *Mullins* the defendant fled after being indicted. Two years later he was apprehended and tried. The Fifth Circuit held that a prior conviction, which at the time of trial was more than ten years old, but which would have been less than ten years old at the time of his trial had he not fled, could be used as impeachment evidence. The court found that it would not allow a criminal to benefit by fleeing his trial: "By his voluntary wrongful act, he cannot gain the protection of Rule 609(b), which otherwise he would not have had." 562 F.2d at 1000. The court analogized the situation to 18 U.S.C. § 3290, in which Congress stated: "No statute of limitations shall extend to any person fleeing from justice." 562 F.2d at 1000. In contrast, there is no allegation in this case that the government acted unlaw-

fully or in bad faith. Rather, the indictment was delayed because Franchi was still involved in undercover operations. Accordingly, we hold that the evidence of Franchi's prior conviction was properly excluded.

## CONCLUSION

For the foregoing reasons, we AFFIRM.