59 F.3d 177
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Salvador MUNOZ-TRIANA, Refugio Barajas-Mejia, Jesus
Martinez-Gutierrez, and Simon Castorena-Sotelo,
Defendants-Appellants.
 Nos. 94-50093, 94-50097, 94-50113, 94-50533.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1995.
Decided June 12, 1995.
 
 Before: PREGERSON, POOLE, and D.W. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Salvador Munoz-Triana, Refugio Barajas-Mejia, Jesus Martinez-Gutierrez, and Simon Castorena-Sotelo appeal their jury convictions for conspiracy to distribute heroin (21 U.S.C. Secs. 846, 841(a)(1)) and possession with intent to distribute heroin (21 U.S.C. Sec. 841(a)(1). Munoz-Triana and Martinez-Gutierrez also were convicted of carrying a firearm in relation to a drug trafficking crime (18 U.S.C. Sec. 924(c)). Castorena-Sotelo also appeals his career offender sentence (21 U.S.C. Sec. 851).
 
 
 3
 We affirm the convictions of Munoz-Triana, Barajas-Mejia and Martinez-Gutierrez, and Castorena-Sotelo. We also affirm Castorena-Sotelo's sentence.
 
 ANALYSIS
 1. Outrageous Conduct
 
 4
 We will not ordinarily review a claim raised for the first time on appeal, but we may do so when necessary to prevent a miscarriage of justice. Jovanovich v. United States, 813 F.2d 1035, 1037 (9th Cir.1987). In this case, all four defendants claim on appeal that the government behaved outrageously when it paid an undercover informant to instigate and catalyze the very drug deal which led to their convictions. If the defendants' allegations are true, their convictions would indeed be a miscarriage of justice. We therefore permit the defendants to raise this argument on appeal.
 
 
 5
 We review de novo whether particular government behavior is or is not outrageous conduct. United States v. Bogart, 783 F.2d 1428, 1434 (9th Cir.1986).
 
 
 6
 At the outset, we must determine which of the defendants has standing to raise this claim. A defendant must be the "actual target" of the government operation to have standing to raise an outrageous government conduct claim. United States v. Emmert, 829 F.2d 805, 811 (9th Cir.1987). Accordingly, the government is correct in asserting that Jesus Martinez and Munoz do not have standing to raise this claim. The government's target in this case was Sotelo. Barajas became ensnared in the government's investigation soon thereafter, when Sotelo referred Sandoval to him. But Jesus Martinez and Munoz only became involved in the government's investigation months after it began, when Barajas told Sandoval to deal with his "nephews" in Anaheim. Even then, Agent Martinez was not targeting Jesus and Munoz directly. Instead, the agent spoke with Jesus only after he was paged, and he spoke to Munoz only because he was trying to get through to Juan Vasquez.
 
 
 7
 "Outrageous government conduct is not a defense, but rather a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed." United States v. Montoya, 45 F.3d 1286, 1300 (9th Cir.1995). We will not reverse on this basis unless the government's conduct "is so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Ramirez, 710 F.2d 535, 539 (9th Cir.1983).
 
 
 8
 It is true, as Barajas and Castorena point out, that Sandoval was paid based on the amount of drugs seized, and that he was the instigator of the crime. However distasteful this conduct might be, we conclude that it does not meet the "extremely high standard" we place on defendants who make this claim. United States v. Smith, 924 F.2d 889, 897 (9th Cir.1991).
 
 2. Restricted Cross-Examination of Sandoval
 
 9
 We review for abuse of discretion a district court's decision as to the scope of cross-examination. "The trial court does not abuse its discretion as long as the jury receives sufficient information to appraise the biases and motivations of the witness." United States v. Guthrie, 931 F.2d 564, 567 (9th Cir.1991).
 
 
 10
 Sotelo wanted to cross-examine Sandoval about crimes he had committed while in the employ of the DEA, and about his failure to file income taxes on the money paid to him by the DEA. The district court denied Sotelo's request to cross-examine Sandoval about these issues. Sotelo ER at 12.
 
 
 11
 The district court, in its discretion, may permit cross-examination regarding particular instances of conduct, other than convictions of a crime, which are "clearly probative of truthfulness or its opposite and not remote in time." Fed.R.Evid. 608(b), Advisory Committee Notes on 1972 Proposed Rules, note 2. In this case, the informant's inclination to deceive federal agencies even while under their employ went very much to the issue of his truthfulness.
 
 
 12
 Furthermore, Sandoval might have been hoping to avoid prosecution for his own recent criminal acts by cooperating with the government. "The right to confront witnesses guaranteed by the Sixth and Fourteenth Amendments includes the right to cross-examine witnesses to show their possible bias or self-interest in testifying." Burr v. Sullivan, 618 F.2d 583, 586 (1980) (citations omitted).
 
 
 13
 The government argues that Sotelo adequately exposed Sandoval's criminal past to the jury, and that the more recent criminal acts of shoplifting and income tax evasion were irrelevant and cumulative. Yet, without hearing about Sandoval's most recent crimes, the jury could have assumed that Sandoval had "come clean," and thus given more credit to his testimony than it would had it heard of his more recent dishonest acts. Therefore, the district court abused its discretion because it excluded evidence the jury needed to accurately assess Sandoval's testimony. Cf. United States v. Roberts, 783 F.2d 767, 770 (9th Cir.1985) (district court does not abuse its discretion in restricting cross-examination so long as the jury has sufficient information to assess the witness's biases and motivations).
 
 
 14
 But any error in restraining Sandoval's cross-examination was harmless. Sotelo's own testimony provided enough evidence from which to find him guilty of the conspiracy. Sotelo admitted that in some of the letters with Sandoval, they were writing about drug deals. Sotelo SER at 216. Sotelo also admitted that the letters were written in code, where "cars" meant drugs. Id. He also admitted to talking on the phone with Sandoval about drug deals. Id. at 220-28, 234-35.
 
 3. The Entrapment Instruction
 
 15
 Jesus Martinez and Sotelo argue that the district court's jury instruction on entrapment misled the jury as to their entrapment defense.
 
 
 16
 "Whether a jury instruction properly states the law of entrapment is a pure question of law subject to de novo review." United States v. Sterner, 23 F.3d 250, 252 (9th Cir.1994). The district court's formulation of the instruction and choice of language are reviewed for abuse of discretion. United States v. Streit, 962 F.2d 894, 898 (9th Cir.), cert. denied, 113 S.Ct. 431 (1992).
 
 
 17
 The entrapment instruction issued by the court in this case was taken from Federal Jury Practice and Instructions, 1 Devitt & Blackmar 762-63, Sec. 19.04 (4th ed. 1992). The instruction stated, in part:
 
 
 18
 A person is entrapped when that person has no previous intent or disposition or willingness to commit the crime charged and is induced or persuaded by law enforcement officers or their agents to commit the crime charged and law enforcement officers or their agents merely provide what appears to be an opportunity to commit the offense.... In determining the question of entrapment, the jury should consider all of the evidence received in this case concerning the intentions and disposition of the defendant before encountering the law enforcement officers or their agents as well as the nature and the degree of the inducement or persuasion provided by the law enforcement officers or their agents.
 
 
 19
 Martinez ER at 112-113 (emphasis added).
 
 
 20
 Sotelo and Jesus Martinez argue that this instruction misstates the law of entrapment because "previous intent or willingness to commit the crime charged" does not make clear that the that jury had to find that the defendants were predisposed to commit the crime before the initial contact by authorities.
 
 
 21
 In United States v. Lorenzo, 43 F.3d 1303 (9th Cir.1995), we ruled on this very question. We concluded in Lorenzo that the phrase "previous intent or disposition" more clearly indicated the requirement that the intent did not exist prior to government contact, than did the term "already" (which is the term preferred by Sotelo and Jesus Martinez). 43 F.3d at 1307.
 
 
 22
 Moreover, we ruled in Lorenzo that we did not have to decide whether the "previous intent or disposition" language was sufficient to explain the requirement that the intent not exist before contact with law enforcement, because the instruction in question also contained the language "before encountering the law enforcement officers or their agents," which cured any ambiguity in the instruction. Id. The instruction given by the court in the instant case contained this very language. Therefore, under Lorenzo, the instruction on entrapment given in this case adequately explained the law of entrapment to the jury.
 
 4. Martinez's Motion for Acquittal
 
 23
 Jesus Martinez's contention that he was entrapped as a matter of law is reviewed de novo. United States v. Davis, 36 F.3d 1424, 1430 (9th Cir.1994).
 
 
 24
 "To find entrapment as a matter of law, there must be undisputed evidence establishing both that the defendant was induced to commit the crime and that he lacked the predisposition to do so." Lorenzo, 43 F.3d at 1305. We have refused to "disturb the jury's finding unless, viewing the evidence in the light most favorable to the government, no reasonable jury could have concluded that the defendants were predisposed to commit the charged offenses." Davis, 36 F.3d at 1430 (citing United States v. Hart, 963 F.2d 1278, 1283 (9th Cir.1992)).
 
 A. Inducement
 
 25
 Jesus Martinez bases his theory of inducement on the fact that the DEA agent challenged his manhood. According to Jesus, Agent Martinez "taunted" him into buying the drugs by asking Jesus whether he had the "balls" to do a drug deal. Martinez ER at 232.
 
 
 26
 It strains credulity to say that by means of Agent Martinez's words alone, Jesus, "an otherwise innocent person," was "induced to commit the illegal act." Lorenzo, 43 F.3d at 1305. Moreover, in reviewing the denial of a motion for acquittal, we are to view the evidence in the light most favorable to the government. United States v. Citro, 842 F.2d 1149, 1151 (9th Cir.1988), cert. denied, 488 U.S. 866 (1988). According to Agent Martinez, he was not the one who raised the issue of "having the balls" to do a deal, but instead, Jesus brought this up. Martinez SER at 32.
 
 B. Predisposition
 
 27
 We apply a five-factor test to assess the predisposition of a defendant in an entrapment inquiry. Citro, 842 F.2d at 1152. In Citro, we stated that the most important factor in determining predisposition is "whether the defendant demonstrated reluctance to engage in the crime which was overcome by repeated Government inducement." Id. at 1152.
 
 
 28
 Jesus Martinez stands on very shaky ground when he claims he was not predisposed to distribute heroin. The initial contact with Jesus Martinez, although made through a government agent, resulted from the suggestion of another drug dealer, Barajas. Jesus Martinez's claim of reluctance is belied further by his access to the drugs and his use of a firearm.
 
 
 29
 The district court did not err in denying Martinez's motion for acquittal.
 
 5. Barajas's Prior Heroin Conviction
 
 30
 The admission of evidence of other crimes pursuant to Federal Rule of Evidence 404(b) is reviewed for abuse of discretion. United States v. Khan, 993 F.2d 1368, 1376 (9th Cir.1993). The district court's decisions balancing the probative value of evidence against its prejudicial effect are also reviewed for abuse of discretion. United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989).
 
 
 31
 The district court erred in permitting the prosecution to introduce Barajas's prior heroin dealing conviction as evidence in the current trial. Rule 404(b) states that evidence of prior crimes is only admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. None of these were proved by admitting evidence of a crime committed fourteen years ago.
 
 
 32
 However, the error was harmless. The evidence presented left no doubt that Barajas personally sold heroin to Sandoval in Watsonville, and, furthermore, set up a far larger deal in Los Angeles. See United States v. Webbe, 755 F.2d 1387, 1389 (9th Cir.1985) (finding a possible error harmless where it did not have substantial influence over the verdict).
 
 6. Sotelo's Life Sentence
 
 33
 Sotelo argues that his mandatory life sentence constitutes cruel and unusual punishment.[1] Whether the district court's sentence constitutes cruel and unusual punishment is reviewed de novo. United States v. Bland, 961 F.2d 123, 128 (9th Cir.), cert. denied, 113 S.Ct. 170 (1992).
 
 
 34
 We have already held that a life sentence imposed under 21 U.S.C. Sec. 841(b)(1)(A) does not violate the Eighth Amendment. United States v. Van Winrow, 951 F.2d 1069, 1071 (9th Cir.1991) (citing Harmelin v. Michigan, 501 U.S. 957 (1991)). Therefore, Sotelo's constitutional argument lacks merit, and we affirm his sentence.
 
 CONCLUSION
 
 35
 Martinez and Munoz lack standing to raise an outrageous government conduct claim. The government did not, as a matter of law, violate Sotelo and Barajas's due process rights by engaging in outrageous conduct. Any error in restricting Sotelo's cross-examination of informant Sandoval was harmless. The district court's entrapment instruction adequately stated the law of entrapment. The district court did not err in denying Martinez's motion for acquittal. Any error in admitting Barajas's fourteen-year-old heroin conviction was harmless. The convictions of the four defendants are AFFIRMED.
 
 
 36
 Sotelo's life sentence does not violate the Eighth Amendment. His sentence is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court's sentence was mandated by 21 U.S.C. Sec. 841(b)(1)(A), which provides: "If any person commits a violation of this subparagraph ... after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence."