UNITED STATES of America,
Plaintiff–Appellee,

v.

Manouk MKHSIAN, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Abram MELIKSETIAN, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Andranik SOGOYAN, Defendant–Appellant.

Nos. 91–50462, 91–50472, 91–50515.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1993.

Decided Sept. 27, 1993.

**1308**

William J. Genego, Santa Monica, CA, for defendant-appellant Mkhsian.

Andrew French Loomis, Oakland, CA, for defendant-appellant Meliksetian.

Richard H. Kirschner, Los Angeles, CA, for defendant-appellant Sogoyan.

Karin J. Immergut, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLETCHER, POOLE, and THOMPSON, Circuit Judges.

FLETCHER, Circuit Judge:

Appellants Mkhsian, Meliksetian, and Sogoyan appeal their convictions for violating 21 U.S.C. §§ 846, 841(a)(1) (conspiracy to possess cocaine with intent to distribute) and 21 U.S.C. § 841(a)(1) (possession of cocaine with intent to distribute). Meliksetian and Sogoyan also appeal their sentences. We have jurisdiction over appellants' timely appeals pursuant to 28 U.S.C. § 1291. We affirm Meliksetian's conviction and sentence, but, because the entrapment instructions given to the jury were erroneous, we reverse Mkhsian's and Sogoyan's convictions and remand for a new trial.

I.

Appellants are Armenian–Americans who, prior to their convictions, resided in the greater Los Angeles area. In June 1990, the FBI asked Richard Stanton, a previously utilized informant, to contact Manouk "Mike" Mkhsian, who the government believed was laundering money. Stanton was directed to present himself as a money launderer and narcotics organization pilot with good connections in Belize and other Central American countries.

Over time, the FBI's investigation evolved into a "reverse sting" narcotics operation. Mkhsian introduced Stanton to Andranik "Andy" Sogoyan and Abram "George" Meliksetian. Eventually, Mkhsian, Sogoyan, and Meliksetian agreed to purchase five kilograms of cocaine from Stanton's "Colombian" sources. Meliksetian, the intended distributor, was arrested when he picked up the cocaine at a Long Beach Holiday Inn parking lot. Mkhsian and Sogoyan surrendered themselves approximately one week later.

The government argued that appellants were sophisticated cocaine dealers, with prior distribution experience, who were anxious to establish a distribution network in Los Angeles. In negotiations with an FBI agent who

posed as an accountant for the fictitious Colombian drug cartel, appellants spoke in code and, right up to the end, seemed aggressive and self-assured.

Mkhsian and Sogoyan claimed that they were entrapped by the government. In particular, they pointed to their testimony that Stanton befriended them, represented himself as a "father figure" who would protect their interests, and that they tried to back out of the deal but were told by Stanton that the "Colombians" were "wild" and withdrawal "would be bad" for them. Stanton, they argued, knew about their financial troubles, pushed the drug deal from the start, and did everything in his power to see it consummated.

Meliksetian testified that he got involved, meeting with Stanton and the FBI "accountant," only because he wanted to help Mkhsian, who had gotten in over his head. When Mkhsian and Sogoyan wanted to pull out of the deal, Meliksetian testified that he told them that he would "take care of this thing" and that "[t]his will end in a good way." His plan, he told the jury, was to pick up the cocaine and call the FBI. When arrested, he was carrying an address book containing an FBI agent's telephone number.

## II.

### A.

■ Mkhsian and Sogoyan argue that they were entrapped as a matter of law.[1] There are two elements to the defense of entrapment: (1) "government inducement of the crime," and (2) "the absence of predisposition on the part of the defendant." *United States v. Skarie*, 971 F.2d 317, 320 (9th Cir.1992).

■ The entrapment issue is ordinarily one for the jury to resolve. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988); *United States v. Smith*, 802 F.2d 1119, 1124 (9th Cir.1986). That is, unless entrapment can be decided as a matter of law, "the issue of whether a defendant has been entrapped is for the jury as part of its function of determining the

guilt or innocence of the accused." *Sherman v. United States*, 356 U.S. 369, 377, 78 S.Ct. 819, 823, 2 L.Ed.2d 848 (1958); *see also United States v. Griffin*, 434 F.2d 978, 981 (9th Cir.1970), *cert. denied*, 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971).

■ To justify an acquittal as a matter of law, Mkhsian and Sogoyan "must point to *'undisputed evidence* making it patently clear that an otherwise innocent person was induced to commit the illegal act' by government agents." *Skarie*, 971 F.2d at 320 (emphasis added) (quoting *United States v. Hart*, 963 F.2d 1278, 1283 (9th Cir.1992) (quoting *United States v. Smith*, 802 F.2d at 1124)). The record here shows the evidence to be in dispute.

■ Stanton's version of events, detailing his initial contacts with Mkhsian and Sogoyan, contrasts markedly with Mkhsian's and Sogoyan's testimony. It is far from "patently clear" that Stanton, the government's agent, induced Mkhsian's and Sogoyan's participation in the cocaine scheme. There are evidentiary disputes on nearly every detail of the first meetings among the three individuals. "[T]he resolution of such conflicting assertions of fact relevant to the entrapment issue is a credibility question for the jury." *Griffin*, 434 F.2d at 981. The vastly different versions of events related at trial forecloses a determination that, as a matter of law, the government induced Mkhsian and Sogoyan to purchase illegal narcotics.

Mkhsian's and Sogoyan's failure to point to undisputed evidence that they were induced makes it unnecessary to consider whether lack of predisposition was established as a matter of law. *See Simas*, 937 F.2d at 462 (where record devoid of evidence of inducement, no consideration of predisposition issue required). We reject their entrapment as a matter of law claims.

### B.

■ Mkhsian and Sogoyan also contend that the instructions given the jury on entrapment misstated the law as set forth in

---

**1.** We review questions of law de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

*Jacobson v. United States,* —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), and *Skarie.*[2] They correctly argue that the instructions did not tell the jury that the government was required to show that they were predisposed to commit the illegal acts prior to the initial contact by government agents. *Jacobson,* —— U.S. at ——, 112 S.Ct. at 1540 (proving predisposition requires government to show "defendant was disposed to commit the criminal act prior to first being approached by [g]overnment agents"); *Skarie,* 971 F.2d at 320 (same).

The decisions in *Jacobson* and *Skarie* were announced while the direct appeals in these cases were pending. The government admits that the entrapment instruction given "did not explicitly state that where the defendant presents evidence of inducement, the government must show evidence of predisposition *before any contact with law enforcement.*" *E.g.,* Red Brief (MM) at 36 (emphasis added). The instructions given stated that

[i]n this case, each defendant asserts that he was a victim of entrapment as to the offenses charged in this indictment. Where a person has no previous intent or purpose to violate the law but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment and, as a matter of policy, the law forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that the government agent provides what appears to be a favorable opportunity is not entrapment.

RT 5/8/91 at 1167.[3]

■ Neither Mkhsian nor Sogoyan objected to this instruction. In fact, Mkhsian proffered an instruction similar to the one given.[4] Nonetheless, review is appropriate under *United States v. Kimball,* 896 F.2d 1218, 1219 (9th Cir.1990), *vacated, in part,* 925 F.2d 356 (9th Cir.1991) (en banc), and *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In *Kimball,* we noted three exceptions to the general rule that an issue raised for the first time on direct appeal will not be considered: (1) when review of the issue is required "to prevent a miscarriage of justice or to preserve the integrity of the judicial process"; (2) when the issue arises by virtue of a change in law while the appeal is pending; or (3) when the issue to be reviewed is purely legal. *Kimball,* 896 F.2d at 1219. *Griffith* recognizes that "a new rule for the conduct of criminal prosecu-

---

**2.** Sogoyan, in his reply brief, adopts Mkhsian's argument that the jury instructions on entrapment misstated the relevant predisposition inquiry.

    Federal Rule of Appellate Procedure 28(i) provides that

        [i]n cases involving more than one appellant or appellee, including cases consolidated for purposes of the appeal, any number of either may join in a single brief, and any appellant or appellee may adopt by reference any part of the brief of another. Parties may similarly join in reply briefs.

Fed.R.App.P. 28(i).

The last phrase, "[p]arties may similarly join in reply briefs," would appear to hold the key. However, no case has been found that directly pertains to the instant situation, where one appellant attempts in his reply brief to adopt an argument raised in a co-appellant's main brief.

    An analogous case, from the Fifth Circuit, dealt with the issue of appellants who finally, at oral argument, adopted arguments made by co-appellants. *United States v. Gray,* 626 F.2d 494, 497 (5th Cir.1980), *certs. denied,* 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980), 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981), 450 U.S.

919 (1981). The court, employing its discretion under Federal Rule of Appellate Procedure 2 to suspend the rules, found that it would be "anomalous to reverse some convictions and not others when all defendants suffer from the same error." *Id.* The court noted that treating the arguments as adopted did not "prejudice the government which had the opportunity to fully brief all issues in response to the various contentions of the defendants." *Id.*

    Here, the government has fully briefed Mkhsian's entrapment instructions argument. Sogoyan's adoption would therefore not be prejudicial. We exercise our discretion to permit Sogoyan's adoption, particularly since it would be unjust to reverse Mkhsian's convictions and not Sogoyan's.

**3.** The written instructions are essentially identical. CR 57, at 17–18.

**4.** Mkhsian's proposed instruction read, in pertinent part, "[o]n the other hand, where a person is already willing to commit a crime, it is not entrapment if [a] government agent merely provides an opportunity to commit a crime." CR 42, at 37.

tions is to be applied retroactively to all cases ... pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith,* 479 U.S. at 328, 107 S.Ct. at 716; *see also Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1720, 123 L.Ed.2d 353 (1993) ("new rules always have retroactive application to criminal cases on direct review"); *United States v. Montoya,* 945 F.2d 1068, 1070–71 (9th Cir.1991) (jury instructions did not adequately define element of offense as required by Supreme Court decision announced after the jury's verdict; on direct appeal, standards announced in subsequent Supreme Court decision apply) (citing *Griffith* ).

The Court's determination in *Jacobson* that it is the government's burden (once evidence of inducement is shown by the defendant) to prove that the defendant "was predisposed to violate the law *before* the [g]overnment intervened," *Jacobson,* —— U.S. at —— n. 2, 112 S.Ct. at 1541 n. 2, changed the law in this circuit. Accordingly, we will review on appeal the claimed instructional error. This review is particularly appropriate because the issue reviewed—whether the entrapment instructions adequately and fairly stated the law—is purely legal.

■ The instruction given by the district court that it is not possible to entrap "a person [who] already has the readiness and willingness to break the law" does not conform to *Jacbson's* requirements. "Already" does not necessarily mean "before the [g]overnment intervened"; indeed, it could mean, for example, that even "if [Mkhsian] was not initially disposed to [buy] drugs, he could ... develop such a disposition during the later course" of interacting with Stanton. *See United States v. North,* 746 F.2d 627, 630 (9th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 832 (1985). So interpreted, the instruction does not correctly state the law. *See Jacobson,* —— U.S. at —— n. 1, 112 S.Ct. at 1540 n. 1 (proper instruction: "If the defendant before contact with law-enforcement officers or their agents did not have any intent or disposition to commit the crime charged and was induced or persuaded by law-enforcement officers

o[r] their agents to commit that crime, then he was entrapped."); *Hart,* 963 F.2d at 1283 n. 1 (proper instruction: defendant's disposition to be considered "before encountering the law enforcement officers or their agents").

■ The instruction as given permitted the jury wrongly to reject Mkhsian's and Sogoyan's entrapment defense. Given Mkhsian's testimony that he never sold cocaine and that he decided to join Stanton in a drug partnership only after several meetings with the government informer, and then because he trusted Stanton and Stanton encouraged Mkhsian to regard him as a father figure, a properly instructed jury might have found that Mkhsian was not predisposed to break the law prior to encountering Stanton. Sogoyan's testimony raises a similar possibility. Thus, the jury instruction was not harmless error. *See Montoya,* 945 F.2d at 1074 (omission of essential element from jury instructions not harmless).

The instruction in this case was an arguably accurate explanation of this circuit's *North*-era law of what constitutes predisposition. The Supreme Court's holding in *Jacobson,* however, changed that law. Accordingly, the convictions of Mkhsian and Sogoyan must be reversed. *See Montoya,* 945 F.2d at 1073–74.

### C.

In light of the foregoing, we need not reach Mkhsian's argument that, as indicated by the court's subsequent ruling that certain photographs and the items depicted therein were inadmissible, it was plain error for the prosecutor to read to the jury a stipulation identifying and describing those photographs. For the same and additional reasons, we do not address Sogoyan's claims of ineffective assistance of counsel relating to the reading of that same stipulation. Not only is such consideration unnecessary here, but such claims are better addressed in collateral proceedings under 28 U.S.C. § 2255. *See United States v. Robinson,* 967 F.2d 287, 290 (9th Cir.1992).

### D.

Meliksetian argues that the denial of his motion to sever prejudiced him because the district court permitted inadmissible hearsay (essentially, the statements of his co-defendants Mkhsian and Sogoyan) to be used against him. We review the district court's severance decisions for abuse of discretion. *United States v. Cuozzo*, 962 F.2d 945, 949 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992).

■ Federal Rule of Criminal Procedure 12(b)(5) is clear that a motion for severance is one that "must be raised prior to trial." Fed.R.Crim.P. 12(b)(5). Rule 12(f) emphasizes that "[f]ailure by a party to . . . make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." Fed.R.Crim.P. 12(f). Meliksetian did not move for severance prior to trial, and offers no "cause" to explain that failure. Under Rules 12(b)(5) and 12(f), Meliksetian waived the opportunity to move for severance. *See United States v. Parson*, 452 F.2d 1007, 1008 (1971) (motion for severance must be made prior to trial; failure to make motion constitutes waiver).[5]

To the extent that Meliksetian's contention is that he was prejudiced by the purportedly inadmissible hearsay statements of Mkhsian and Sogoyan, the government is correct when it points out that the challenged statements were co-conspirator statements that would have been admissible against Meliksetian if he had been tried alone.

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if made "by a coconspirator . . . during the course and in furtherance of the conspiracy." Fed. R.Evid. 801(d)(2)(E). Meliksetian argues that because his involvement in the charged conspiracy commenced at a late stage, "[e]vidence that was admissible as to [the] co-defendants was inadmissible as to him." Meliksetian Blue Brief, at 17.

■ Meliksetian miscomprehends conspiracy law. He admits his involvement in the charged conspiracy. *Id.* Thus, the statements of his co-conspirators "are not hearsay even if made prior to the entry of the conspiracy by the party against whom [they are] used." *United States v. Anderson,* 532 F.2d 1218, 1230 (9th Cir.), *cert. denied,* 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976); *see also United States v. United States Gypsum Co.,* 333 U.S. 364, 393, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). At least nine other circuits are in accord. *See United States v. Brown,* 943 F.2d 1246, 1255 (10th Cir.1991) (listing cases).

> "[O]ne who joins an ongoing conspiracy is deemed to have adopted the prior acts and declarations of co-conspirators, made after the formation and in furtherance of the conspiracy. As long as it is shown that a party, having joined a conspiracy, is aware of the conspiracy's features and general aims, statements pertaining to the details of plans to further the conspiracy can be admitted against the party even if the party does not have specific knowledge of the acts spoken of."

Paul Marcus, *Prosecution and Defense of Criminal Conspiracy Cases* § 5.05[2][c], at 5–57 (1993) (quoting *United States v. Angiulo,* 847 F.2d 956, 969 (1st Cir.), *certs. denied,* 488 U.S. 852, 928, 109 S.Ct. 138, 314, 102 L.Ed.2d 110, 332 (1988)).

Thus, Meliksetian was not prejudiced during the joint trial by inadmissible hearsay. The admission of his co-conspirator's declarations, though undoubtedly detrimental to his case, was permitted under Rule 801(d)(2)(E).

### E.

Meliksetian also argues that the district court improperly allowed the prosecution to refresh informant Stanton's recollection without requiring a proper foundation, in effect enabling Stanton to give a kind of scripted testimony. The trial court has "wide limits of discretion" in its decisions to permit the prosecution to refresh the memory of a witness. *Thomas v. United States*, 227 F.2d 667, 671 (9th Cir.), *cert. denied,* 350 U.S. 911,

---

**5.** Further, Meliksetian did not renew at the close of the evidence the motion for severance made during trial. That failure alone constitutes waiv-

er. *United States v. Restrepo,* 930 F.2d 705, 711 (9th Cir.1991).

76 S.Ct. 194, 100 L.Ed. 799 (1955). Absent "clear injustice," that discretion will not be abridged. *Id.*

■■■■ Meliksetian points to seven. instances where Stanton apparently looked at a transcript to refresh his recollection. We cannot say that the court abused its discretion in permitting his refreshment. There is no indication that these were more than isolated instances in the course of several hours of testimony.[6] Moreover, it is not essential that the prosecutor first establish that the witness has exhausted his present recollection before she can refresh his memory. *United States v. Pate,* 543 F.2d 1148, 1149 (5th Cir.1976). We reject this argument.

### F.

■■■■ Finally, Meliksetian argues that he should be sentenced for the actual amount of cocaine purchased (4.9938 kilograms), rather than for the amount he and his co-conspirators negotiated to buy (5 kilograms). Under the Guidelines, a quantity of 5 kilograms requires a base offense level of 32, with a sentencing range (at criminal history category I) of 121–151 months; a quantity greater than 3.5 kilograms, but less than 5, requires a base offense level of 30, with a range of 97–121 months.[7] U.S.S.G. § 2D1.1(c)(6), (7); U.S.S.G. Ch. 5 (sentencing table). We review de novo the district court's application of the Sentencing Guidelines. *United States v. Frazier,* 985 F.2d 1001, 1002 (9th Cir. 1993).

Guidelines § 2D1.4(a) (Nov. 1990), since deleted,[8] provided that "[i]f a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed." U.S.S.G. § 2D1.4(a). Application note 1, in relevant part, provided that "[i]f the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount." *Id.,* comment. (n. 1).

In *Frazier,* the defendant and his co-conspirators agreed to buy 2 kilos of cocaine from an undercover law enforcement officer. *Frazier,* 985 F.2d at 1002. The agent actually delivered 1.9948 kilograms. *Id.* We held that even in a "reverse sting" operation, the quantity negotiated, and not the quantity delivered, determines the offense level. *Id.;* *see also United States v. Molina,* 934 F.2d 1440, 1451–52 (9th Cir.1991) (negotiated amount of 50 kilograms, not 49.97 kilograms actually possessed, used to calculate base offense level).

Here, the district court properly used the negotiated amount of five kilograms to calculate Meliksetian's base offense level. *Frazier* and *Molina* foreclose Meliksetian's argument. We uphold Meliksetian's sentence.

### G.

Sogoyan maintains that remand is necessary to permit the district court to consider new case law that allows it to evaluate whether the government should have filed a "substantial assistance" motion. He argues that he rendered substantial assistance, and that the government's failure to move for a downward departure (thereby depriving the court of the authority to impose a sentence below the statutory minimum of ten years, *see* 18 U.S.C. § 3553(e) [9]) violated his rights

---

6. Similarly, there is no indication that special agent Smith was permitted to do anything more than glance at a transcript to refresh his memory. Only once in the course of Smith's testimony did a defense attorney—Sogoyan's counsel—indicate that Smith was taking advantage of the trial court's decision to permit him to refresh his recollection. RT 5/2/91 at 420.

7. Because of a statutory mandatory minimum, Meliksetian's range at a base offense level of 30 would have been 120–121 months. *See Wade v. United States,* —— U.S. ——, ——, 112 S.Ct. 1840, 1842, 118 L.Ed.2d 524 (1992).

8. As we noted in *Frazier,*

   [t]he United States Sentencing Commission consolidated provisions dealing with attempts and conspiracies in drug cases with guidelines applicable to substantive drug offenses. *See* U.S.S.G. Section 2D1.4 ( [Nov.] 1992). *See* U.S.S.G. Appendix C, n. 447 at 271.

   *Frazier,* 985 F.2d at 1002 n. 1.

9. Sogoyan's reply brief misstates the argument as disputing the "government's refusal to make a 5K1.1 motion." Sogoyan Reply Brief at 18. In fact, the issue is the government's failure to make

**1314**

and is subject to judicial scrutiny. Because this issue may present itself following Sogoyan's new trial, we review this contention.[10]

■ The Supreme Court's recent decision in *Wade v. United States,* —— U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), clarifies the court's capacity to review the government's conduct under both the statutory and Guidelines substantial assistance provisions. It holds that "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive"; that authority may be exercised in both the § 3553(e) and Guidelines § 5K1.1 contexts. *Id.* —— U.S. at —— – ——, 112 S.Ct. at 1843–44; *see also Delgado–Cardenas,* 974 F.2d at 126 (discussing *Wade* ).

■ Thus, the trial court's ruling that it had no "authority to sentence below the mandatory [statutory] minimum unless the government makes a motion for the Court to do so," RT 9/23/91 at 13—a ruling rendered before the opinions in *Wade* and *Delgado–Cardenas* were announced—is incorrect. However, the Court made it clear in *Wade* that "a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing." *Wade,* —— U.S. at ——, 112 S.Ct. at 1844. Because a "showing of assistance is a necessary condition for relief [but] not a sufficient one," Sogoyan must make a "substantial threshold showing" that the government "refused to file a motion for suspect reasons such as his race or his religion," or that "the prosecutor's refusal to move was not rationally related to any legitimate [g]overnment end." *Id.* (internal quotation marks omitted); *Delgado–Cardenas,* 974 F.2d at 126. Moreover, the district court gave no indication that it would exercise its supervisory powers to inquire sua sponte about matters that might affect Sogoyan's rights. *Delgado–Cardenas,* 974 F.2d at 126.

■ Indeed, Sogoyan's request was for "the opportunity to have a hearing to demonstrate that what we offered to the government in fact amounted to substantial assistance by any definition of what that could conceivably be." RT 9/23/91 at 13. His counsel admitted that there was no allegation that the government acted in bad faith. *Id.* at 12. This is not a substantial threshold showing as delineated by *Wade.* A showing of a violation of due process rights requires more than "generalized allegations of improper motive." *Wade,* —— U.S. at ——, 112 S.Ct. at 1844. We reject Sogoyan's argument that remand is required.

### III.

We reverse Mkhsian's and Sogoyan's convictions and remand for a new trial. We affirm Meliksetian's conviction and sentence.

REVERSED and REMANDED, in part, and AFFIRMED, in part.

---

a § 3553(e) motion. *See, e.g.,* ER–AS at 24; RT 9/23/91 at 7 (Sogoyan's counsel: "a 3553(e) situation as we have here").

**10.** We review de novo the legality of a sentence. *United States v. Delgado–Cardenas,* 974 F.2d 123, 126 (9th Cir.1992).