56 F.3d 75
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Derrick Troy WALKER, Defendant-Appellant.
 No. 93-50292.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 1, 1995.
Decided May 24, 1995.
 
 Appeal from the United States District Court for the Central District of California, No. CR-90-405-JGD; John G. Davies, District Judge, Presiding.
 C.D.Cal.
 REVERSED.
 Before: FLETCHER, BRUNETTI, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Derrick Troy Walker appeals his conviction and sentence for possessing with the intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1), and conspiracy, in violation of 21 U.S.C. Sec. 846. We have jurisdiction and reverse.
 
 
 3
 * At the time of his arrest in April of 1991, Derrick Walker was a member of the California State Bar with a small private practice. Walker's arrest was the result of a four-month investigation initiated by the Los Angeles District Attorney's office and the Drug Enforcement Agency (DEA) after the DEA arrested Steven Ochoa in July of 1990 and seized two kilograms of cocaine from Ochoa's possession. After his arrest, Ochoa admitted to DEA agents that the two-kilogram transaction was part of a larger plan to dispose of thirty kilograms of cocaine and implicated Walker as the broker of the deal. After Ochoa agreed to cooperate, the District Attorney's office and the DEA began investigating Walker.
 
 
 4
 In January of 1991, the DEA sent an informant using the name Navarro Cordova to meet with Walker and record their conversation. Although Cordova was able to engage Walker in a conversation about cocaine, Walker discontinued discussions with Cordova after this initial meeting. Therefore, the DEA instructed Ochoa, now acting as a government informant, to renew contact with Walker. Ochoa told Walker that he still possessed the thirty kilograms of cocaine from the previous, failed transaction and asked Walker to connect him to a buyer. Walker declined, telling Ochoa that he now practiced law. After several conversations, however, Walker agreed to locate a buyer for Ochoa's cocaine. On April 23, 1991, after a lengthy series of failed attempts to transfer the cocaine to Walker's buyers, Ochoa finally delivered ten kilograms of cocaine to Edward Stewart. Walker was arrested shortly thereafter.
 
 
 5
 In a two-count indictment, Walker was charged with conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 846, and possession with intent to distribute ten kilograms of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). At his jury trial, Walker admitted participating in the transaction but claimed that the government had entrapped him. The government attempted to show that Walker was predisposed to participating in cocaine transactions by presenting evidence of Walker's alleged prior brokering activities and his recorded conversation with Cordova.
 
 
 6
 The jury convicted Walker on both counts of the indictment. In November of 1991 and July of 1992, Walker filed motions for a new trial. Both motions were denied. On April 12, 1993, the district court sentenced Walker to 188 months in prison. Walker filed a timely notice of appeal.
 
 II
 
 7
 Walker challenges both conviction and sentence on numerous grounds. We reverse because the entrapment instruction did not state correctly the government's burden under Jacobson v. United States, 503 U.S. 540, , 112 S.Ct. 1535, 1540-41 & n.2.[1] The district court instructed the jury as follows:
 
 
 8
 In order to establish entrapment, it must be shown that the defendant was, one, induced to commit the crime by a Government agent, and two that he was not otherwise predisposed to commit the crime. The Government must prove beyond a reasonable doubt that the defendant was not entrapped. If the Government proves beyond a reasonable doubt that the defendant was predisposed to commit the crime, then entrapment does not constitute a defense to the charges regardless of inducement. This means entrapement [sic] is established when law enforcement officials acting either directly or through an agent induce or persuade an otherwise unwilling person to commit an unlawful act. Where a person is predisposed to commit an offense or to violate the law the fact that the Government officials or their agents afforded opportunities for him to do so does not constitute harassment.
 
 
 9
 Inducement must be provided by someone acting in a Government capacity, and can take many forms, including persuasion, fraudlent [sic] representations, threats[,] coercive tactics, harassment, rewards or pleas based on need[,] sympathy or friendship. A solicitation, request or approach by law enforcement officials to engage in criminal activity standing alone is not an inducement. Where profit is to be derived from the transaction, it does not alone constitute inducement.
 
 
 10
 To determine whether a defendant is predisposed to commit a crime you can consider[,] one, the character or reputation of the defendant, including any prior criminal history. Two, whether the defendant engaged in a criminal activity for profit. Three, and most important[,] whether defendant evidenced reluctance to commit the crime overcome only by repeated Government inducement or persuasion. Four, the nature of the inducement or persuasion supplied by the Government. Five, and less important[,] whether the suggestion of the criminal activity was initially made by the Government.
 
 
 11
 In conclusion, if you find that the Government induced the defendant to commit the crime, and if you find that he was not predisposed to commit the offenses charged, then you must find him not guilty. If you find that he was willing to commit the crime, and the Government agents merely provided him opportunity to commit the crime, then it is not entrapment.
 
 
 12
 The instruction failed to instruct the jury, as required by Jacobson, that the government must prove "that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." Jacobson, 503 U.S. 540, , 112 S.Ct. at 1540 (emphasis added).
 
 
 13
 In a series of cases decided since Jacobson, we have held that the following instruction falls short of stating the law under with Jacobson:
 
 
 14
 ... Where a person has no previous intent or purpose to violate the law but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment and, as a matter of policy, the law forbids his conviction in such a case.
 
 
 15
 On the other hand, where a person already has the readiness and the willingness to break the law, the mere fact the government agent provides what appears to be a favorable opportunity is not entrapment.
 
 
 16
 United States v. Mkhsian, 5 F.3d 1306, 1310-11 (9th Cir. 1993) (emphasis added); see also United States v. Davis, 36 F.3d 1424, 1431-32 (9th Cir. 1994) (substantially similar instruction misstated the law under Jacobson), cert. denied, U.S. , 115 S. Ct. 1147 (1995); United States v. Sterner, 23 F.3d 250, 252 (9th Cir. 1994) (reversing conviction based on instruction identical to one in Mkhsian); United States v. Lessard, 17 F.3d 303, 305 (9th Cir. 1994) (reversing conviction based on instruction identical to one in Davis). The instructions disapproved in these cases shared the same flaw as the instruction given by the district court in this case: They failed to instruct the jury that it must determine whether the government has established beyond a reasonable doubt that the defendant was disposed to commit the crime before contact by law enforcement officers. Cf. United States v. Lorenzo, 43 F.3d 1303 (9th Cir. 1995) (district court complied with Jacobson by instructing the jury that it should consider "the intentions and disposition of the Defendant before encountering the law enforcement officers or their agents"); Mkhsian, 5 F.3d at 1311 (citing examples of proper instructions).
 
 
 17
 The government attempts to distinguish the instruction given in this case because it did not contain the "already" language found in the Mkhsian, Davis, Sterner, and Lessard instructions. The government misreads our cases. We disapproved the instructions in those cases despite, not because of, the use of the word "already." "'Already' does not necessarily mean 'before the [g]overnment intervened'; indeed, it could mean, for example, that even 'if [the defendant] was not initially disposed to [buy] drugs, he could ... develop such a disposition during the later course' of interacting with [government agents]." Mkhsian, 5 F.3d at 1311.
 
 
 18
 Like the instructions in Mkhsian, Davis, Sterner, and Lessard, the entrapment instruction delivered by the district court failed to define for the jury the appropriate time frame for determining the defendant's predisposition. This instructional error was not harmless. Walker testified that he had never brokered a narcotics transaction and was induced, over his objections, by Ochoa's repeated promises to refer legitimate clients to Walker's struggling practice. A properly instructed jury might have been left with a reasonable doubt regarding Walker's predisposition to break the law prior to his discussion with Cordova and his reacquaintance with Ochoa after Ochoa agreed to cooperate with the government.
 
 
 19
 The government argues that the evidence of Walker's predisposition is so overwhelming that any error in the instructions was harmless. However, "the issue of whether a defendant has been entrapped is for the jury." Sherman v. United States, 356 U.S. 369, 377 (1958). The government relies on Davis, where this court disapproved an entrapment instruction under Jacobson but nevertheless affirmed the defendant's conviction. 36 F.3d at 1431-32. However, the defendant in Davis "made only a minimal showing of inducement, arguing that [the informant's] generosity left him with a sense of obligation to him that induced him to sell crack." Id. at 1432. Here, Walker claimed that Ochoa used the promise of legitimate legal work and at one point feigned the risk of financial and physical danger to himself to induce Walker to broker the cocaine transaction. Indeed, the jury asked for clarification regarding the meaning of predisposition and, when it was having difficulties reaching a verdict, indicated that it could not agree on the issue of entrapment. Moreover, the defendant in Davis withdrew his Jacobson objection after the district court permitted him to argue the appropriate legal standard in his closing argument. Id. at 1431 & n.3. There is no similar consideration weighing against reversal in this case.
 
 III
 
 20
 Because we reverse Walker's conviction based on the jury instruction's failure to state correctly the government's burden under Jacobson, we need not address Walker's remaining claims.
 
 
 21
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Walker did not object to the jury instruction based on Jacobson. Indeed, Walker submitted an instruction including the very language to which he now objects. Nevertheless, Walker may raise the issue on appeal because his trial occurred prior to the Supreme Court's decision in Jacobson. See United States v. Mkhsian, 5 F.3d 1306, 1310 (9th Cir. 1993)