UNITED STATES of America, Plaintiff–Appellee,

v.

Salvatore LaRIZZA, Defendant–Appellant.

No. 94–30236.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1995.

Decided Dec. 29, 1995.

Francis J. Diskin, Assistant United States Attorney, Seattle, Washington; Kenneth G. Bell, Assistant United States Attorney, Tacoma, Washington, for plaintiff-appellee.

Before: WRIGHT, ALARCON, and CANBY, Circuit Judges.

ALARCON, Circuit Judge:

Salvatore LaRizza (LaRizza) appeals from the judgment of conviction for drug related charges. LaRizza contends that the district court erroneously instructed the jury regarding the defense of entrapment. LaRizza further contends that his due process rights were violated because the district court denied his motion for an order requiring the Government to produce its informant as a witness.

We affirm because we conclude that the jury was properly admonished that the Government was required to persuade it that LaRizza was disposed to distribute cocaine prior to being first approached by the Government agents. We also conclude that LaRizza has failed to demonstrate that the denial of his motion for an order for the production of the Government's informant was a violation of his right to due process.

I

The facts are not in dispute. During early 1990, the Seattle Division of the Federal Bureau of Investigation (FBI), in a joint operation with the Seattle Police Department, pursued an investigation into the activities of several persons suspected of a variety of criminal offenses, including gambling, prostitution, profit skimming, and narcotics violations. Detective Richard O'Donnell worked undercover for the Seattle Police Department in this investigation.

On March 23, 1990, Robert Payton introduced Detective Richard O'Donnell to LaRizza at a restaurant where LaRizza worked as a waiter. Payton was an associate of Frank Colacurcio, who was suspected of involve-

Steven L. Olsen, Olsen & Olsen, Bainbridge Island, Washington; Richard B. Jones, Port Orchard, Washington, for defendant-appellant.

ment in organized crime. An informant, identified solely as "Angela," was also present at that meeting.

LaRizza testified that after the March 23, 1990 meeting, Angela called him many times. She talked about laundering money and she asked if he had connections for drugs.

LaRizza saw Angela again during an Easter dinner held at a Seattle restaurant. LaRizza testified that Angela once again had "a conversation about drugs" with him. LaRizza was not asked nor did he testify regarding the substance of their discussion.

In May of 1990, LaRizza met Angela at the Red Lion Hotel in Seattle. No one else was present during this meeting. Angela asked LaRizza if he would be willing to provide cocaine to Detective O'Donnell. LaRizza responded that he might be able to do so.

On May 17, 1990, Detective O'Donnell, LaRizza, and Angela were at a party. Detective O'Donnell gave LaRizza and Angela a ride from the party to LaRizza's automobile. While en route, Angela informed Detective O'Donnell that LaRizza had access to cocaine.

During the next several months, Detective O'Donnell spoke to LaRizza about obtaining cocaine. LaRizza agreed to talk to persons he knew in California. On January 16, 1991, Detective O'Donnell again spoke with LaRizza about obtaining cocaine. LaRizza and Detective O'Donnell flew to San Francisco on March 3, 1991. The purpose of the trip was twofold: for LaRizza to contact his source for cocaine face-to-face because his source was not returning his telephone calls, and to arrange for the purchase of cocaine. LaRizza was unsuccessful in contacting his source and in obtaining any cocaine. On March 4, 1991, Detective O'Donnell and LaRizza flew back to Seattle. The next day, LaRizza informed Detective O'Donnell that he had been contacted by his source and that if they had stayed in San Francisco an additional day, they could have obtained the cocaine. LaRizza also told Detective O'Donnell that the price of the cocaine was $22,000 per kilogram.

Over the next two weeks, LaRizza and Detective O'Donnell discussed when they would return to California for the cocaine. On March 17, 1991, they returned to San Francisco. Shortly after arrival, LaRizza left Detective O'Donnell at the hotel and went to meet Gabriel Becerra. LaRizza and Gabriel Becerra travelled to Gabriel Becerra's residence. Shortly thereafter, Jose Becerra arrived carrying a plastic bag. Gabriel Becerra drove LaRizza back to the hotel. There, LaRizza delivered a kilogram of cocaine to Detective O'Donnell in exchange for $22,000. LaRizza and Detective O'Donnell returned to Seattle the next day.

On April 21, 1991, Detective O'Donnell and LaRizza again flew to California to obtain cocaine and heroin. LaRizza left Detective O'Donnell at the hotel and went to Gabriel Becerra's residence. Jose Becerra arrived with a small brown bag. Gabriel Becerra drove LaRizza back to the hotel. There, LaRizza delivered a kilogram of cocaine to Detective O'Donnell. Shortly thereafter, LaRizza left the hotel, met with Gabriel Becerra and returned with an ounce of heroin, which he delivered to Detective O'Donnell. Detective O'Donnell and LaRizza flew back to Seattle, the next day.

During the following weeks, Detective O'Donnell and LaRizza discussed a series of larger cocaine transactions. Detective O'Donnell asked LaRizza whether he could obtain 25 kilograms of cocaine. LaRizza responded that he could do so.

On May 13, 1991, Detective O'Donnell and LaRizza drove to Oakland from Seattle. On May 14, 1991, LaRizza informed Detective O'Donnell that he needed money to complete the transaction. Detective O'Donnell refused to release any money without production of the cocaine. LaRizza and Detective O'Donnell decided that the transaction would occur in stages, at a separate location. LaRizza then met with Gabriel Becerra, but returned to the hotel to inform Detective O'Donnell that the transaction could not be completed because only six kilograms of cocaine were available. LaRizza stated, however, that the transaction could be completed the next day. FBI agents arrested LaRizza. Gabriel and Jose Becerra were arrested at their respective residences.

On the first day of trial, Gabriel and Jose Becerra pled guilty to conspiring to distribute cocaine. On November 18, 1991, LaRizza was convicted of conspiracy to distribute cocaine and heroin, and interstate travel in aid of racketeering. The Becerras and LaRizza appealed. In a published opinion, we reversed LaRizza's judgment of conviction, and remanded for a new trial, because the district court committed error in refusing to instruct the jury on the defense of entrapment. *United States v. Becerra*, 992 F.2d 960, 964 (9th Cir.1993).

Two days after the commencement of LaRizza's second trial, he moved for an order requiring the Government to produce its informant. The district court denied the motion. The jury found LaRizza guilty on all counts and he was sentenced to serve twenty years in prison.

## II

■ LaRizza contends that the district court's entrapment instruction was erroneous because it "failed to clearly and adequately advise the jury that its focus must be on whether Mr. LaRizza had the predisposition to deliver cocaine prior to Angela ever contacting him." Appellant's br. at 12. We review *de novo* the question whether a jury instruction properly states the law of entrapment. *United States v. Lorenzo*, 43 F.3d 1303, 1306 (9th Cir.1995).

The Government contends that we should review the entrapment instruction for plain error because LaRizza failed to object to the instruction on the grounds asserted on appeal. The record does not support the Government's contention. Defense counsel objected to the court's entrapment instruction on the basis that it failed adequately to address the Government's burden to persuade the jury that the accused was predisposed to distribute the cocaine and heroin before his initial contact with the Government agents. The district court rejected LaRizza's proposed language.

■ The Supreme Court stated in *Jacobson v. United States*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), that where the defendant relies on the defense of entrapment, "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." *Id.* at 549, 112 S.Ct. at 1540. It is the court's duty to instruct the jury as to the Government's burden. The instruction given by the court in this action provides, in pertinent part:

A person is entrapped when the person has no previous intention to violate the law and is persuaded to commit a crime by government agents. On the other hand, *where a person is predisposed to commit the offense when first contacted by government agents,* the fact that the government afforded him the opportunity to do so does not constitute entrapment. Once the defense of entrapment is raised, the burden is on the Government to prove beyond a reasonable doubt that the defendant was not entrapped.

There are two elements to the defense of entrapment: (1) an inducement by the government to commit the crime, and (2) *the absence of predisposition on the part of the defendant.*

. . . .

The second part of the defense of entrapment concerns *predisposition of the defendant at the time when he is first approached by government agents.* Predisposition is a state of mind which readily responded to the opportunity furnished by the officer or his agent to commit the offense charged.

RT 593–95 (emphasis added).

■ The term "predisposition" is defined as the "defendant's inclination to engage in illegal activity for which he has been charged, *i.e.,* that he is ready and willing to commit the crime. It focuses on defendant's state of mind *before* government agents suggest that he commit the crime." *Black's Law Dictionary* 1177 (6th ed. 1990) (emphasis added). The court's instruction clearly stated that the jury must consider the defendant's predisposition "at the time when he [was] first approached by the government agents."

LaRizza contends that the instruction given by the district court in this case is similar to that given to the jury in *United States v. Mkhsian*, 5 F.3d 1306 (9th Cir. 1993). In *Mkhsian*, we reversed the judgment of conviction because the entrapment instruction did not comply with *Jacobson. Id.* at 1311. LaRizza's reliance on *Mkhsian* is misplaced. In *Mkhsian* the jury was instructed as follows:

Where a person has no previous intent or purpose to violate the law but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment. . . .

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that the government agent provides what appears to be a favorable opportunity is not entrapment.

*Id.* at 1310. The jury instruction in *Mkhsian* was flawed because of the district court's use of the term "already." *Id.* at 1311. "Already" does not necessarily refer to a time before the Government intervened. *Id.* As we explained in our opinion, "already" could mean, for example, that even if the defendant was not initially disposed to engage in criminal activity, he could develop such a disposition during the later course of interacting with the government informant. *Id.* In contrast, in the instant matter, the jury was properly admonished that it had to decide whether the defendant was predisposed to commit the crime at the time he was first approached by government agents. The dis-

trict court did not err in instructing the jury regarding the defense of entrapment.

### III

LaRizza also argues that the denial of his oral motion for production of the informant violated his right to a fair trial. We review *de novo* the question whether an accused's due process rights were violated. *United States v. Lewis*, 979 F.2d 1372, 1374 (9th Cir.1992). We review for clear error a district court's finding of reasonable efforts to produce an informant. *United States v. Hart*, 546 F.2d 798, 801–02 (9th Cir.1976) (en banc), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977).

The Government is not under any general obligation to produce an informant at trial. *United States v. Bonilla*, 615 F.2d 1262, 1264 (9th Cir.1980) (citing *Velarde–Villarreal v. United States*, 354 F.2d 9, 12 (9th Cir.1965)). The Government, however, is required to exert reasonable efforts to produce an informant whenever the informant's " 'presence has been properly requested by the defendant.' " *Id.* (quoting *Hart*, 546 F.2d at 799). Courts typically find the Government's efforts unreasonable when it acts with negligence or intentional avoidance. *United States v. Montgomery*, 998 F.2d 1468, 1473 (9th Cir.1993).

The Government's actions here were entirely reasonable. It responded to an informal request by LaRizza by disclosing the informant's identity and last known location.[1] LaRizza did not formally move for production of the informant until the close of the second day of his second trial.[2] He did not

---

1. The prosecutor notified defense counsel that: the informant is not under the ongoing control of the FBI or any of the other agencies involved in this case, or even any agencies that we know of that are not involved in the case. . . . the current whereabouts of this person are unknown. . . . I gave counsel information as to where she might have been or thought—we thought she might have been during August of this year [1993]. But she's been out of contact with local agents and wholly outside their control since February 1991. The FBI even closed their investigation on her as of May of 1991. We have no means by which to be able to produce her. I provided defense counsel with all of the information we had as to her whereabouts as well as her

identity in response to her request, did so voluntarily, and also provided information as to what she had received from the government in exchange for her services.

2. The oral motion, in its entirety, was as follows:

MS. DEUTSCH [Assistant Federal Public Defender]: Your Honor, in light of your ruling in regard to Mr. Gombiner's [Assistant Federal Public Defender] not being allowed to inquire further as to Angela, I would ask that you direct the government to produce Angela so that we can examine her. She is, again, the government agent who has the first contact with Mr. LaRizza in regard to a conversation about cocaine. They had the conversation with him not only on April 9 at the Red Lion

present any evidence or make an offer of proof in support of the motion. The government was not required to make further efforts at that late date. The district court did not clearly err in finding reasonable efforts. Because the government acted reasonably, and LaRizza has not shown a reasonable possibility that the absence of the witness affected the verdict, there was no due process violation. *See United States v. Walton,* 411 F.2d 283, 288–90 (9th Cir.1969); *see also United States v. Valenzuela–Bernal,* 458 U.S. 858, 873–74, 102 S.Ct. 3440, 3449–50, 73 L.Ed.2d 1193 (1982).

**AFFIRMED.**

when she alone had lunch with him but she had conversations prior to that over the telephone. There were subsequent conversations that Angela had with Salvatore LaRizza and Detective O'Donnell was not present.

Again, when you talk about the entrapment defense, the people or the government must show that Salvatore LaRizza had the predisposition to sell the drugs prior to the contact with the government's agent. Now, I would refer

the court to—I would refer the court to the general case law in terms of what constitutes predisposition and what constitutes inducement to determine whether or not Angela, in working with the government, was one of the agents who induced Salvatore LaRizza to commit the crimes charged, and therefore I would ask that you direct the government to produce her.