924 F.Supp. 1025 (1996)
UNITED STATES of America, Plaintiff,
v.
Benjamin Amoral MARTINEZ, Defendant.
No. CR 95-266-PA.
United States District Court, D. Oregon.
April 30, 1996.
*1026 *1027 Kristine Olson, United States Attorney, John C. Laing, Special Assistant U.S. Attorney, Portland, OR, for Plaintiff.
Alan L. Gallagher, Canby, OR, for Defendant.

OPINION
PANNER, District Judge.
Defendant Benjamin Martinez moves for judgment of acquittal or a new trial following his conviction by a jury of three counts of methamphetamine distribution and one count of possession of methamphetamine with intent to distribute. I grant the motions.

BACKGROUND
At trial, defendant conceded that he engaged in the methamphetamine transactions at issue. He maintained, however, that he was entrapped by the actions of a government informant, Alvaro Plancarte. As such, Plancarte's testimony was critical to the government's case.
Plancarte testified that he first met defendant through a mutual friend in February 1995. Plancarte worked on defendant's car and stated that he became friends with defendant. Plancarte testified that with no prompting from defendant, Plancarte freely announced to defendant that in addition to fixing cars, he bought and sold large quantities of drugs. According to Plancarte, defendant responded that he knew a person who made crank. Plancarte attempted to learn the supplier's identity but defendant was reluctant to share that information. Later, when Plancarte was again fixing defendant's car, Plancarte told defendant that he wanted fifty pounds of methamphetamine "to begin with." That same day, Plancarte told Salem Police Detective Tim Diede about defendant for the first time. Diede then arranged for Plancarte to arrange to purchase one-half pound of methamphetamine as a sample of what could be provided. That purchase occurred on May 24, 1995.
Plancarte could not remember how many times he was in contact with defendant between his first meeting and the first drug transaction. Upon further questioning, he indicated that it was less than thirty times but it could have been more or less than ten times. He took no notes describing his contacts with defendant.
Two subsequent purchases occurred. The first, June 7, 1995, was for one pound of methamphetamine. The second, June 20, 1995, was for five pounds of methamphetamine at the price of $27,500. Defendant received only $10,000 from Plancarte on that date with the understanding that Plancarte owed an additional $17,500. A fourth transaction was to occur on June 27, 1996. However, defendant was arrested before its completion.
Plancarte receives "a few thousand" dollars per month from Diede for his informant work. In addition, he receives a bonus of approximately $3,500 or $4,000 for an arrest, as he did in this case. Plancarte is paid in cash and he pays no income taxes on this compensation. Plancarte testified that he had never heard the word entrapment and that Diede had not reviewed the word or the concept with him. Although Plancarte has never received any special training for performing work as an informant, he has testified as a witness in other criminal proceedings and his presentation in this case was smooth and evidenced that he had been well-coached. In contrast, defendant, with only a fourth grade education and limited knowledge of English, was not an accomplished witness. Moreover, although Plancarte and defendant each spoke through an interpreter, it was obvious that Plancarte had some command of English and defendant did not.
Defendant has no prior criminal record. Other than testimony concerning the drug transactions, the government presented no evidence regarding defendant's character. In contrast, defendant presented several witnesses attesting to his good character and reputation. These witnesses described defendant as a person easily led by others. *1028 They were shocked to learn that he had engaged in drug transactions.
Defendant testified that Plancarte initiated all conversations regarding drugs. Plancarte initially asked defendant if he knew people who had drugs. Defendant indicated that Plancarte frequently contacted him, sometimes once a day. Plancarte did not refute that testimony.
Although defendant stated that Plancarte promised him $20,000 if he procured the drugs, Plancarte denied promising any inducements or applying any pressure. Defendant testified that Plancarte repeatedly asked defendant to get involved with providing drugs but that defendant did not say yes until Plancarte promised that he would be defendant's godfather in Mexico. Testimony from defendant and at least one other witness established that the godfather or "padrino" relationship is very significant in Mexican culture.

STANDARDS

I. Motion for Judgment of Acquittal
Federal Rule of Criminal Procedure 29(c) allows for a motion for judgment of acquittal within seven days of the jury's discharge. In considering a Rule 29 motion for judgment of acquittal, the evidence against defendant is reviewed in the light most favorable to the government to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Von Willie, 59 F.3d 922, 928 (9th Cir.1995). All reasonable inferences are drawn in favor of the government. United States v. Andrino-Carillo, 63 F.3d 922, 924 (9th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 746, 133 L.Ed.2d 694 (1996).

II. Motion for a New Trial
The court may grant a motion for a new trial "if required in the interest of justice." Fed.R.Cr.P. 33. A motion for a new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Rush, 749 F.2d 1369, 1371 (9th Cir.1984). In deciding a motion for a new trial, I am not constrained by the requirement that I view the evidence in the light most favorable to the government. United States v. Campbell, 977 F.2d 854, 860 (4th Cir.1992), cert. denied, 507 U.S. 938, 113 S.Ct. 1331, 122 L.Ed.2d 716 (1993). Thus, I may evaluate the credibility of the witnesses. Id.; see also United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir.1992) (court may evaluate credibility of witnesses in new trial motion); United States v. Leach, 427 F.2d 1107, 1110 (1st Cir.) (same), cert. denied, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970). When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial. Campbell, 977 F.2d at 860.

DISCUSSION
The only issue at trial was whether Plancarte had entrapped defendant. A defense of entrapment has two elements: government inducement of the crime and the absence of predisposition on the part of the defendant. United States v. Skarie, 971 F.2d 317, 320 (9th Cir.1992). The principal element of the defense is the defendant's lack of predisposition to commit the crime. United States v. Barry, 814 F.2d 1400, 1401 (9th Cir.1987). The prosecution must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime prior to first being approached by government agents. United States v. Davis, 36 F.3d 1424, 1430 (9th Cir.1994) (citing Jacobson v. United States, 503 U.S. 540, 548-49, 112 S.Ct. 1535, 1540-41, 118 L.Ed.2d 174 (1992)), cert. denied, ___ U.S. ___, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995).
The term "predisposition" is defined as the "defendant's inclination to engage in illegal activity for which he has been charged, i.e., that he is ready and willing to commit the crime. It focuses on the defendant's state of mind before government agents suggest that he commit the crime." United States v. LaRizza, 72 F.3d 775, 778 (9th Cir.1995) (emphasis added).
Although Plancarte was a polished and professional witness, several aspects of his work are extremely disturbing and undermine *1029 his credibility to such an extent that no rational trier of fact could have found the essential element of entrapment beyond a reasonable doubt. The following factors weigh heavily against Plancarte: (1) he had no education regarding the word or concept of entrapment; (2) he is paid a substantial salary for his informant work; (3) he pays no income tax on his compensation; and, most importantly, (4) he is paid a significant bonus of $3,500 to $4,000 for an arrest, creating an overwhelming incentive to entice or otherwise induce or pressure a defendant into committing a crime that the defendant had no predisposition for committing absent the inducement.
I recognize that entrapment is generally a jury question and that questions regarding the credibility of witnesses are generally committed to the jury's province. United States v. McClelland, 72 F.3d 717, 724 (9th Cir.1995) (questions of credibility are for the jury to decide), cert. denied, ___ U.S. ___, 116 S.Ct. 1448, 134 L.Ed.2d 567 (1996); United States v. Smith, 802 F.2d 1119, 1124 (9th Cir.1986) (entrapment generally a jury question). However, when the factors of this informant's working conditions and compensation arrangement, especially a bonus for arrests, are examined, I am compelled to conclude that Plancarte's credibility is such that the inferences drawn by the jury from his testimony in support of the government were unreasonable. Accordingly, the inferences, especially when considered with defendant's own testimony and the testimony of his witnesses, cannot support a finding of defendant's predisposition to commit these crimes.
The government argues that several facts and reasonably drawn inferences support the verdict. The government maintains that (1) the jury was entitled to conclude that defendant would not have had access to such large amounts of drugs had he not been predisposed to distribute them; (2) that witnesses who testified to defendant's good character had lost contact with him when he moved to Gervais shortly before meeting Plancarte; (3) that after moving to Gervais, defendant began associating with Cain Sandoval-Lopez, an alleged drug dealer; (4) that defendant's testimony regarding an Uzi machine gun conflicted with defendant's friend's description of the gun; (5) that the number of telephone calls from defendant to Plancarte was inconsistent with defendant's defense of entrapment; and (6) that defendant's testimony was biased due to his interest in beating the charges against him.
Viewed without the taint of Plancarte's testimony, some of the government's inferences are plausible. However, reasonable inferences consistent with innocence are just as easily drawn. For example, in a small community like Gervais, defendant would likely have known, or could have easily found out, who was engaged in drug trafficking even without any prior personal predisposition to participate. Defendant moved to Gervais to be closer to his job and thus, by the time of his arrest, had not seen his family in a few months. His move was almost contemporaneous with his meeting Plancarte. The fact that he was out of contact with his family after meeting Plancarte is inconsistent with any inference of predisposition to distribute drugs before meeting Plancarte. Finally, defendant himself testified that he frequently called Plancarte because Plancarte owed him $17,500 for the June 20, 1996 transaction and that the supplier was threatening defendant.
In addition, defendant notes that Plancarte met defendant for the first time in February 1995 and introduced the subject of drugs at their first meeting. The first buy was not until May 24, 1995. Thus, the evidence supports an inference that it took Plancarte more than three months to arrange for a drug buy because of defendant's resistance to engage in the transaction. Defendant notes that none of the evidence on predisposition was direct and that the circumstantial evidence establishes only that defendant knew where to obtain drugs. According to defendant, inferring that he was predisposed to distribute methamphetamine because he was able to obtain it is an unreasonable inference. Under the particular circumstances of this case, I agree.
Although "the government's evidence need not exclude every reasonable hypothesis consistent with innocence ... to support an inference of guilt[,] ... the evidence *1030 must include sufficient probative facts from which a rational factfinder, applying the reasonable doubt standard, could choose the hypothesis that supports a finding of guilty rather than hypotheses that are consistent with innocence." United States v. Bishop, 959 F.2d 820, 830 (9th Cir.1992) (citations omitted).
As in many cases, competing hypotheses can be derived from the facts. In this case, however, given the entire presentation of Plancarte, from his delivery and affect on the witness stand to his overwhelming incentive to pressure and induce his suspects into distributing drugs, the evidence does not include sufficient probative facts from which a rational factfinder, applying the reasonable doubt standard, could choose the hypothesis supporting a finding of guilty rather than the hypothesis consistent with innocence. When the evidence regarding Plancarte's motive to pressure is considered, the verdict shocks the conscience. Thus, to analogize to the civil context, this verdict is so out of line with reason that it shocks the conscience and implies that it must have been the result of passion or prejudice. See Chalmers v. City of Los Angeles, 762 F.2d 753, 760 (9th Cir. 1985) (verdicts which are grossly excessive, monstrous, or shocking to the conscience will be set aside); see also Randall v. Chevron U.S.A., Inc., 13 F.3d 888, 901 (5th Cir.1994) (award disproportionate to injury will not be sustained when it shocks the conscience or indicates passion, prejudice, corruption, bias, or another improper motive).
Defendant's behavior was consistent with innocence and the government's only evidence is insufficient to allow a rational jury to conclude beyond a reasonable doubt that the defendant was in fact predisposed to transact in methamphetamine. I grant defendant's motion for judgment of acquittal.
Alternatively, I grant defendant's motion for a new trial. As indicated above, on a motion for a new trial, I am not required to review the evidence in a light most favorable to the government and may freely evaluate the credibility of the witnesses. For the reasons stated above, I conclude that Plancarte's testimony is not credible and is not capable of supporting any reasonable inference of defendant's predisposition to distribute methamphetamine. Without Plancarte's testimony, there is no basis upon which to find defendant guilty. I conclude that the evidence weighs so heavily against the verdict that it would be unjust to enter judgment against defendant. Thus, I grant defendant's motion for a new trial.

CONCLUSION
I grant defendant's motion for judgment of acquittal (# 62-1) and alternatively, I grant defendant's motion for a new trial (# 62-2).